### COLLINS v. BANK OF TITUSVILLE & TRUST CO.

#### In re HENDRY.

Circuit Court of Appeals, Fifth Circuit. December 14, 1929.

No. 5727.

David Peel, of Melbourne, Fla., and Leon Wilson Alexander, of Jacksonville, Fla., for appellant.

L. C. Crofton, of Titusville, Fla., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The appellant, as trustee of the estate of a bankrupt, resisted a claim of the appellee based on a mortgage executed to it by the bankrupt and recorded within four months prior to the filing of the bankruptcy petition, on the ground that at the time the mortgage was given the bankrupt was insolvent and the appellee then had reasonable cause to believe that the enforcement of the mortgage would effect a preference. The court sustained the mortgage as to part of the property covered by it. Evidence adduced showed the following: The bankrupt, who was engaged in the business of operating a drug store in Titusville, Fla., was insolvent at the time the mortgage was given. The mortgage, which covered the bankrupt's stock of merchandise and fixtures in the drug store, was given to secure a debt in the sum of $7,000 of the bankrupt to the appellee, a banker in Titusville, which debt had been in existence more than six months when the mortgage was executed. J. E. Nobles, the official of the appellee who represented it in the transactions with the bankrupt, knew that prior to the time the debt was contracted the bankrupt had been neglecting his business, and that he continued to neglect his business after the debt was contracted. The debt was extended between the time it was contracted and the time the mortgage was given. The bankrupt paid nothing on that debt, though Nobles for the appellee asked him to reduce it. Nobles, who was in the bankrupt's store daily, was informed that the bankrupt was spending money freely. Several times within a month before the mortgage was given the appellee, because the bankrupt did not have to his credit a balance sufficient to pay checks drawn by him, refused to pay such checks, one of which was for $46.59 and another for $47.38. Some time later each of those checks was paid when again presented. Within a month prior to the making of the mortgage the balance to the credit of the bankrupt in his deposit and checking account with appellee was 32 cents. The balance to his credit on the day the mortgage was given was $6.32. Nobles knew that the bankrupt was indebted to another bank,

that he owed other debts, and that the mortgage covered all the bankrupt had to offer. The bankrupt had a lease on the premises in which he did business. He assigned that lease to appellee as further security for his debt.

We think the evidence shows that at the time the mortgage in question was given the appellee had such notice of the bankrupt's financial condition and transactions as would put on inquiry as to the debtor's solvency a reasonably prudent creditor seeking security for a pre-existing debt. The evidence warrants the inference that, if an ordinarily diligent inquiry had been made, appellee would have learned that the bankrupt was insolvent, and that the enforcement of the mortgage would effect a preference. Where a creditor is so put on inquiry which, if it had been prosecuted with ordinary diligence, would have disclosed the debtor's insolvency and the consequences of a mortgage given by the debtor to secure a pre-existing debt, the creditor is chargeable with having had, when the mortgage was given, and within the meaning of the statute (Bankruptcy Act § 60b, 11 USCA § 96(b), reasonable cause to believe that the enforcement of the mortgage would effect a preference. Boston National Bank v. Early (C. C. A.) 17 F.(2d) 691; Rosenthal v. Bronx Nat. Bank (D. C.) 222 F. 83; Collier on Bankruptcy (13th Ed.) 1299. We conclude that the mortgage in question was voidable at the instance of the appellant, the trustee.

The decree is reversed.