Leonard MIZELL, Appellant,

v.

H. A. PHILLIPS, as Trustee of the Estate of J. Sam Muckleroy, Bankrupt, Appellee.

No. 16233.

United States Court of Appeals Fifth Circuit.

Jan. 18, 1957.

Robert F. Peden, Jr., Bay City, Tex., Eli C. Mayfield, Palacios, Tex., M. U. S. Kjorlaug, Houston, Tex., of counsel, for appellant.

John C. Snódgrass, Houston, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel, for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

Involuntary bankruptcy proceedings resulted in J. Sam Muckleroy's being adjudicated a bankrupt on March 12, 1954. Appellee, as Trustee in Bankruptcy, brought this action under 11 U.S.C.A. § 96, subs. a, b [§ 60 of the Bankruptcy Act] to recover, as a voidable preference, the sum of $17,828.24 paid on an antecedent debt by the bankrupt to Mizell November 25, 1953. The jury, by special verdict in answer to interrogatories propunded by the Court, found that Muckleroy was insolvent on the crucial date and that Mizell had reasonable cause to believe him insolvent. Mizell appeals from a judgment for the Trustee, contending that the competent evidence was insufficient to support the jury's finding. Our only question here is the consideration of this contention.

The bankrupt owned and operated oil well drilling rigs, and had employed Mizell for a period of approximately two years preceding November 25, 1953 to do his hauling. During this period the indebtedness incurred in connection with said services was about one thousand dollars per month. The outstanding balance increased until August, 1953, when it amounted to over $21,000.00. A partial payment reduced the amount due as of November 25, 1953 to $17,828.24. Muckleroy, on this date, through arrangements with the Citizens State Bank of Ganado, Texas, mortgaged his drilling rig and obtained a cashier's check payable to Mizell for the amount due him. It is this payment on which the Trustee brought suit alleging that it constituted a voidable preference. The Bank filed its claim and received payment in full as a secured creditor.

It is undisputed that the payment to Mizell amounted to a preference as the total unpaid claims in the bankruptcy proceeding amounted to $113,502.69, with only $12,131.50 available to pay them. The burden rests upon the Trustee of alleging and proving that the

preference was voidable. In re LeMaire Cosmetic Co., Inc., 7 Cir., 1949, 174 F.2d 749.

■ To establish this, the Trustee was under the burden of producing sufficient competent evidence from which the jury could fairly determine that the bankrupt was insolvent on the date of the alleged voidable preference. November 25, 1953, the liabilities of Muckleroy amounted to $178,853.00; the value of the assets, as computed by the Trustee, amounted to $102,056.00. Appellant contends that the evidence adduced by the Trustee to establish the fair market value of the assets was insufficient [1] and, in part inadmissible.

■ In presenting the evidence of fair market value, the Trustee allowed $29,506.28, the book value carried on Muckleroy's books,[2] as the value of the rig, even though at a trustee's private sale, accomplished after advertising and contacting numerous prospective purchasers, the rig brought only $20,575.00. The admission in evidence of the price brought at the trustee's sale lends probative force to the asset evaluation and is competent evidence to establish insolvency. Healy v. Wehrung, 9 Cir., 1916, 229 F. 686; Elliotte v. American Savings Bank & Trust Co., 6 Cir., 1927, 18 F.2d 460, and Burns Bros. v. Cook Cole Co., 3 Cir., 1931, 46 F.2d 31. Additional testimony introduced revealed that a subsequent sale of this rig after improvements were made, brought only $34,000.-00. Though there was evidence adduced by appellant that the rig was worth considerably more,[3] it was within the province of the jury to determine the credibility of the witnesses and the weight of the evidence. We cannot say that the admissible evidence was insufficient to establish the fair valuation of the rig.

■ Appellant's major reliance in attempting to bridge the gap between the bankrupt assets and liabilities on November 25, 1953 was upon the value of the rig. It is sufficient to say after examination of the evidence, however, that the jury was fully warranted in finding insolvency upon the evidence as a whole. Full valuation was given by the Trustee to all the assets [4] and even if the upper limit of the value placed on the rig by Mizell were allowed, the liabilities would still exceed the assets on the crucial date by a large amount.

■ The question of probable cause to believe the bankrupt insolvent is one of fact for the jury and its verdict must be accepted if there is substantial evidence to support it. Jencks v. United States, 5 Cir., 1955, 226 F.2d 540, 547; Skene v. O'Dwyer, 5 Cir., 1953, 204 F.2d 909, 912; Security-First National Bank of Los Angeles v. Quittner, 9 Cir., 1949, 176 F.2d 997; and 3 Collier on Bankruptcy, 14 Ed., § 60.54. Moreover, all

1. In 3 Collier on Bankruptcy, 14th Ed. § 60.30, *Definition of Insolvency*, it is stated: "In order that a preference be effected under § 60 of the Act, a transfer of property must be made or suffered by the debtor 'while insolvent' * * * Under § 1(19) a person is deemed to be 'insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts.'" And see Mitchell v. Investment Securities Corp., 5 Cir., 1933, 67 F.2d 669, 671.

2. Book value does not necessarily prove fair market value, but is competent evidence. Inter-State National Bank of Kansas City v. Luther, 10 Cir., 1955, 221 F.2d 382.

3. Mizell testified between $75,000 and $100,000 and a witness unfamiliar with this particular rig valued a rig capable of equivalent performance at between $125,000–$200,000.

4. Two accounts receivable were compromised for a sum less than book value some months subsequent to November 25th. Though this figure would tend to establish bankruptcy at a later date, insolvency on this date is competent evidence of insolvency on the crucial date, though not sufficient standing alone. Inter-State National Bank of Kansas City v. Luther, supra.

the evidence bearing upon this question is to be considered collectively. H. D. Lee Co. v. Bostian, 8 Cir., 1951, 187 F.2d 942. The evidence introduced here was sufficient to support a jury finding that the bankrupt's account with Mizell grew from a few hundred dollars in December, 1952 to over $21,000 in August, 1953. During August and September Mizell's agent in charge of collections made numerous telephone calls to the bankrupt attempting to collect the account, always receiving the promise of payment upon his, the bankrupt's receipt of debts owed him said to aggregate $42,000.00. These promises were never fulfilled. In September the bankrupt issued a $15,000.00 check payable to Mizell. Twice this check was deposited and twice returned for insufficient funds.[5] During this time, little or no work was done for the bankrupt, whereas in prior months the account approximated $1,000 per month.

Testimony was introduced that Mizell had contacted the Citizens State Bank of Ganado, Texas, and had made arrangements for the bank to lend Muckleroy money by putting his drilling rig up as security. This loan was consummated and the proceeds thereof paid to Mizell.

Countervailing testimony by Mizell was to the effect that he did not arrange the loan; but, under the surrounding circumstances, the jury was warranted in rejecting this testimony.[6]

 Upon this evidence the jury was amply justified in finding that Mizell or his agent [7] had reasonable cause to believe Muckleroy insolvent. Moreover, under these circumstances it was incumbent upon Mizell to make inquiry, as a reasonably prudent business man, concerning the solvency of Muckleroy. If inquiry would lead to the development of facts establishing insolvency, then he is chargeable with the knowledge that the facts would have revealed. Inter-State National Bank of Kansas City v. Luther, supra; Lang v. The First National Bank in Houston, 5 Cir., 1954, 215 F.2d 118; Margolis v. Gem Factors Corp., 2 Cir., 201 F.2d 803; In re Cox, 7 Cir., 1943, 132 F.2d 881; Collins v. Bank of Titusville & Trust Co., 5 Cir., 1929, 36 F.2d 482; and 3 Collier on Bankruptcy, 14th Ed. § 60.53.

Finding no reversible error in the record, the judgment is accordingly,

Affirmed.

---

5. See 3 Collier on Bankruptcy, 14 Ed., § 60.54, pp. 1005–1006, where it is stated: "But where a creditor has repeatedly pressed his debtor for the payment, and checks previously given therefor have been dishonored, the creditor has been held to have sufficient notice of the debtor's insolvency to render a transfer preferential."

6. Testimony of the officer of the bank making the loan was that it was made to accommodate Mizell and only upon the condition that he guarantee it. The bank officer did not know Muckleroy, made no check for outstanding liens on the rig, nor did he examine the rig and appraise its value, but relied upon Mizell's estimate of $75,000–$100,000.

7. § 60, sub. b of the Bankruptcy Act provides:

"Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

3 Collier on Bankruptcy, 14th Ed., § 60.55, provides: "In accord with general principles of agency law, knowledge or reasonable cause to believe possessed by the preferred creditor's agent, acting with reference to the preference, is imputed to the creditor."

See, also, M. M. Landy, Inc., v. Nicholas, 5 Cir., 1955, 221 F.2d 923, 931.