George B. AZAR, as Trustee in Bankruptcy of Robert L. Fallat, Plaintiff,

v.

ELECTRIC CONSTRUCTORS, INC., Defendant.

Civ. A. Nos. 2555–N, 2556–N.

United States District Court
M. D. Alabama, N. D.

Nov. 1, 1967.

**34**

Oakley Melton, Jr., Montgomery, Ala., for plaintiff.

George I. Case, Jr., McGowen & McGowen, Birmingham, Ala., for defendant.

## OPINION OF THE COURT

JOHNSON, Chief Judge.

The questions presented in these consolidated cases arising out of a bankruptcy proceeding are:

1. Did defendant obtain from the bankrupt Fallat a preferential transfer as defined in Section 60 of the Bankruptcy Act (11 U.S.C.A. § 96)?

2. Did defendant obtain from the bankrupt Fallat a voidable transfer as defined in Section 70, sub. e of the Bankruptcy Act (11 U.S.C.A. § 110)?

The formulation of these issues is reflected in the pretrial orders dated August 22, 1967. If the answer to either of the above questions is affirmative, the Trustee in Bankruptcy, plaintiff here, is entitled to recover the value of the property transferred with interest.

Robert L. Fallat, doing business as Fallat's Furniture Fair, was adjudicated a bankrupt on April 1, 1965. He opened this retail furniture business in Montgomery, Alabama, in November, 1964, and closed its doors to business on March 1, 1965. During that three or four months he incurred debts in excess of $100,000. At and after the date of bankruptcy, his trustee liquidated a total estate turned over by the bankrupt of only $3,375.

The bankrupt was insolvent practically from the inception of business until he was adjudicated a bankrupt. After January 1, 1965, he was sending out form letters advising his creditors of his inability to pay his debts as they accrued. He in fact failed to pay his debts, including his debts for advertising and publicity, which, the evidence shows, was discontinued for non-payment, by the newspapers and television after December, 1964. He defaulted in the payment of his rent to B. H. Klein, his landlord, due on March 1, 1965. He failed to pay his State sales taxes. He depleted his stock of goods without regard to price, and in effect, gave some of the merchandise away. Finally his own petition in bankruptcy, after his creditors placed him in bankruptcy, admits his insolvency.

It is also noteworthy, although we do not consider it in determining this case, that the evidence shows that Fallat had previously, within the past six years, been adjudicated a bankrupt in Kansas, and that his financial reputation was not good. Dun and Bradstreet, on behalf of defendant, had difficulty locating Fallat for purposes of obtaining a financial report.

From November 17, 1964, through November 30, 1964, defendant, a wholesale appliance distributor, shipped to Fallat at Montgomery from Birmingham, stereo and television sets, and other household appliances, the invoice totals on which were $12,065.60.

On November 18, and November 30, 1964, Fallat executed, through his Attorney-in-fact, C. L. Teal, who was also the president of the defendant corporation, the following documents covering the appliance items shipped in late November:

1. Two promissory waive notes (for $9,277.25, and $2,788.35) due three months from the date each was made, payable to defendant at Birmingham.

2. On the same piece of paper with each note, what purports to be "Trust Receipts" covering the property ship-

ped, and dated November 18, and 30, 1964. The appliance items were listed on the trust receipts.

On November 18, and November 30, 1964, defendant assigned and conveyed the notes and trust receipts with recourse: the first (for $9,277.25) to the Exchange Security Bank of Birmingham, the second (for $2,788.35) to the Birmingham Trust National Bank of Birmingham.

These Banks advanced the amounts of the promissory notes to defendant, and received copies of the invoices, promissory notes and trust receipts with the executed assignments.

On February 11, 1965, and on March 11, 1965, a "Statement of Trust Receipts Financing" was filed with the Secretary of State of Alabama at Montgomery, covering these appliance items.

At no time were the trust receipts or any other documents giving notice of the debt and claimed security to defendant, put on record in the Probate Office of Montgomery County, where the appliance items were located and offered for sale to the public by Fallat.

From December 1, 1964, to February 15, 1965, Fallat made payments to the Birmingham Trust National Bank on the promissory note it held, leaving appliances with invoice values of $1,448.65, in Fallat's store. From January 14, 1965, to February 10, 1965, Fallat made payments due to Exchange Security Bank on the promissory note it held, leaving appliances with invoice values of $4,555.-15 in Fallat's store.

On February 27, 1965, defendant repossessed the appliance items left in Fallat's store, placed them in a storage warehouse, and subsequently removed them to Birmingham. During warehouse storage, appliance items were sold by defendant to third persons with a total invoice value of $1,236.

After removal of the merchandise to Birmingham, defendant paid both Banks in full the balance of the total invoice prices owing on the Fallat notes.

The trustee now seeks to recover the value of the payments made and the merchandise repossessed for the benefit of general creditors.

■ There was a preferential transfer, within the meaning of Section 60 of the Bankruptcy Act, of property of the bankrupt to defendant, the value of which the trustee is entitled to recover in these proceedings.

It is undisputed that the payments by Fallat were made, and the repossession took place within four months prior to April 1, 1965, the date of bankruptcy. It is also indisputable that Fallat was insolvent at the time the payments were made and the merchandise repossessed on February 27, 1965.[1]

Moreover, defendant knew or had reasonable cause to believe that Fallat was insolvent at the time of the transfers. The evidence that Fallat was not available for a credit report being made *for defendant* coupled with the repossession on February 27, one day before the November 30 note was due, is indicative of knowledge, if not of actual insolvency, then at least of knowledge which would have put a reasonably diligent business man on inquiry as to insolvency. The circumstances surrounding repossession, particularly Fallat's refusal to renew the security arrangement with defendant's agent, Breed, some ten days before repossession, is an additional factor pointing to knowledge. Defendant is thus chargeable with notice of other facts recited above clearly showing insolvency which such inquiry would have disclosed. Clower v. First State Bank of San Diego, Texas, 343 F.2d 808 (5th Cir. 1965).

Defendant was by his own admission, from November 18, and November 30, 1964 (prior to the transfers) a creditor of Fallat, since defendant held unconditional promissory notes secured by trust receipts on the appliances shipped.

---

[1]. The payments and repossession were clearly transfers within the meaning of Section 1(30) of the Bankruptcy Act. 11 U.S.C.A. § 1(30).

The assignment of the notes was with recourse on defendant.

The late recording of these trust receipts meant that such trust receipts as transfers within the meaning of the Act were perfected, within the meaning of the Bankruptcy Act (Title 11 U.S.C.A. § 96) and the Alabama Uniform Trust Receipts Act (Title 39, Code of Alabama, 1940, Section 191 et seq.) within four months of Bankruptcy. The recordation of the receipt of November 18, some 85 days later and of the receipt of November 30, some 191 days later, thus served to make the debts antecedent, within the meaning of Section 60, sub. a of the Bankruptcy Act (11 U.S.C.A. § 96). Corn Exchange Nat. Bank and Trust Co. v. Klauder (1943) 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884.[2]

Nor is there any doubt that the transfers under such circumstances worked a preference in favor of defendant as a creditor. For defendant received, by such transfers, full payment of the debts owed to defendant by Fallat, whereas other general creditors, holding over $100,000 in debts, will not receive over 3% on their claims, and the estate available to them is reduced by the transfers complained of herein.

Defendant was a general creditor of the same class with many other general creditors, since defendant's late recording of the so called trust receipts, on February 11, 1965, and March 11, 1965, did not place defendant in any class different from that of general creditors whose claims accrued before recording. Glessner v. Massey-Ferguson, Inc., CA 9, 1965, 353 F.2d 986, cert. den. 384 U.S. 970, 86 S.Ct. 1859, 16 L.Ed.2d 681. Dean v. Planters National Bank of Hughes, Arkansas, D.C.Ark., 176 F.Supp. 909.

The conclusion is clear that there was a voidable preference.

■ The transfers attacked by trustee in these cases, are also voidable transfers within the meaning of Section 70, sub. e(1) of the Bankruptcy Act. (11 U.S.C.A. § 110(e) (1)).

There are numerous creditors, some of whom are listed in the exhibits to interrogatory answers filed herein by the trustee, who became creditors of the bankrupt subsequent to execution of the trust receipts and prior to their recordation. These creditors had provable claims which the trustee, under Section 70, sub. e(1) may assert as against defendant. A specific creditor who had a continuous claim for indebtedness during all times pertinent to any inquiry under Section 70, sub. e(1), was the bankrupt's landlord, B. H. Klein, who maintained a superior lien claim for rent, a provable debt under the Alabama laws (Title 31 Code of Alabama, 1940, as Amended Section 29) and the Bankruptcy Act.[3]

The recordation of these trust receipts before bankruptcy cannot protect defendant here as against the trustee. If they are truly trust receipts, as defendant asserts, then their late recording has allowed subsequent creditors with provable claims to arm the trustee. If they are conditional sales contracts or chattel mortgages, as trustee asserts, then their non-recordation in Probate in Montgomery County, as required by Title 47 Code of Alabama, 1940, as Amended Sections 131 or 123, is likewise effective to arm the trustee.

■ Of course, the recordation of the trust receipts by defendant within four months prior to bankruptcy, in itself amounts to a transfer, which will authorize the trustee, standing in the place of a creditor with a provable claim, to recover in full the property subject to the defendant's security device, or the

---

2. The payments by Fallat on his debts to defendant and the repossession by defendant were certainly transfers made to satisfy an antecedent debt.

3. The exclusion of a landlord's lien, under Title 39 Code of Alabama, 1940, as amended, Section 191(14), does not change the landlord's status as a continuous creditor.

money equivalent thereof. See Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133; GMAC v. Coller, CA 6, 106 F.2d 584, cert. den. 309 U.S. 682, 60 S.Ct. 723, 84 L.Ed. 1026; Corley v. Cozart, CA 5, 1940, 115 F.2d 119.

All the transfers are thus voidable by the trustee in this case.

It is, accordingly, the conclusion of the Court that the trustee is entitled to recover the value of the transfers made to defendant prior to bankrupcty, which is the sum of $12,065.60, with interest.