**John S. BRUNSON, Trustee of Frank Court, d/b/a Court's Wholesale Company, and the Bootery, a Bankrupt, Plaintiffs-Appellees,**

v.

**The FIRST NATIONAL BANK OF BRYAN, Defendant-Appellant.**

**No. 26590.**

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1969.

James E. Ross, Houston, Tex., Blades, Crain, Slator, Winters & Ross, Houston, Tex., for defendant-appellant.

Myron M. Sheinfeld, Houston, Tex., for plaintiffs-appellees.

Before GOLDBERG and MORGAN, Circuit Judges, and LIEB, District Judge.

PER CURIAM:

This case was submitted to a jury in the court below upon a single interrogatory which inquired, "Did the First National Bank of Bryan know, or should it have known, that Frank Court was insolvent during the period November 2 to November 7, 1964?" To this special interrogatory, the jury answered, "Yes." Basing its decision upon the jury's answer to this one interrogatory and the stipulations of counsel relating to the other essential elements of a preferential payment case under the Bankruptcy Act,[1] the district court entered judg-

---

1. Section 60(a) (1) of the Bankruptcy Act, 11 U.S.C.A. § 96(a) (1), provides as follows:

    "A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an ante-cedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage

**1194**

ment that the appellee, John S. Brunson, the Trustee in Bankruptcy, recover from the appellant, The First National Bank of Bryan (Texas), the sum of $9,498.55 with interest at the rate of 6% per annum from November 7, 1964, until paid. On appeal the bank argues that the district court erred in not deciding as a matter of law that the bank did not know and could not be expected to know that the bankrupt's financial condition had deteriorated to the point of insolvency.

■■ The bank asserts that where, as here, the basic facts relative to a debtor's insolvency are undisputed, the inference to be drawn from those facts is a question of law for the court and not a question of fact for the jury. This contention is fallacious. Medlin v. Merit Clothing Company, 6 Cir. 1960, 283 F.2d 111. So long as more than one inference may reasonably be drawn from the evidence, the drawing of inferences from the evidence is within the province of the jury. Cf. Miller v. Brazel, 10 Cir. 1962, 300 F.2d 283, 286. More specifically, whether or not a creditor knew or should have known of the debtor's insolvency is itself a question of fact which may properly be submitted to a jury. In Mizell v. Phillips, 5 Cir. 1957, 240 F. 2d 738, 741–742, we read:

"The question of probable cause to believe the bankrupt insolvent is one of fact for the jury and its verdict must be accepted if there is substantial evidence to support it. [Cases cited]. Moreover, all the evidence bearing upon this question is to be considered collectively."

See also 3 Collier on Bankruptcy § 60.54 (1967).

The evidence in the record tending to show that the bank knew or should have known of the bankrupt's insolvency can be summarized as follows:

(1) In the course of negotiating for a new loan from the bank, the bankrupt told the bank of his financial difficulties and submitted a financial statement. The financial statement, however, failed to mention a $9,000.00 outstanding note held by the bank. From this evidence a jury could logically infer that the bank should have known that the bankrupt was not revealing the extent of his financial difficulties.

(2) As a result of the negotiations, the bankrupt assigned accounts receivable to the bank without receiving any additional money. In addition, there is testimony in the record that these assignments were given to secure a pre-existing loan rather than as collateral for a prospective loan. In actuality the proceeds from the assigned accounts were applied to a pre-existing loan. The jury could have inferred from these facts that the bank realized that the bankrupt was in worse financial condition than usual and that the bank was therefore trying to protect itself against precisely what happened—the bankruptcy of its debtor.

(3) During the month preceding the assignment, the bankrupt overdrew his account twenty times. This is certainly an indicant of financial instability.

The above evidence as a collectivity is more than sufficient to justify the district court's submission to the jury of the fact question whether the bank knew or should have known that the bankrupt was insolvent when the assignments

---

of his debt than some other creditor of the same class."

Section (b) of the above identified statute states as follows:

"Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

Section (b) of the statute then goes on to say that the trustee may recover the property or its value from any person.

For the purposes of this appeal, all the elements of a voidable preference can be presumed to be established except the last, namely, the requirement that the creditor shall have "reasonable cause to believe" that the debtor was insolvent at the time of the transfer.

were taken, and to support the jury's answer that the bank knew or should have known. Mizell v. Phillips, 5 Cir. 1957, 240 F.2d 738. The judgment of the district court is

Affirmed.