**In re ARDMORE SALES CO., INC. t/a Tem-Tee Nuts, Debtor.**

**ARDMORE SALES CO., INC., t/a Tem-Tee Nuts, Plaintiff,**

**v.**

**THICO PLAN, INC., Defendant.**

**Bankruptcy No. 81–03421G.**

**Adv. No. 82–0170G.**

United States Bankruptcy Court, E. D. Pennsylvania.

Sept. 8, 1982.

Rudolph J. DiMassa, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for debtor/plaintiff, Ardmore Sales Co., Inc. t/a Tem-Tee Nuts.

Charles M. Golden, Daniels, Golden & Seitz, Philadelphia, Pa., for defendant, Thico Plan, Inc.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether a payment by a debtor of a check, drawn, presented for collection and honored outside of the 90 day period immediately preceding the date of the filing of the debtor's petition for relief, the amount of which check

was allegedly subject to a final audit to be made within the 90 day period, constitutes a voidable preference within the meaning of section 547(b) of the Bankruptcy Code ("the Code"). We conclude that such a payment is not voidable because the payment in question was made and perfected outside of the 90 day period preceding the filing of the bankruptcy petition and because the present record is devoid of any evidence which indicates that the sum transferred was in any way a conditional payment as between the debtor and the payee.

The facts of this case have been stipulated by the parties and are as follows: [1]

The defendant, Thico Plan, Inc. ("Thico"), a subsidiary of the Home Insurance Company ("Home"), financed a business owner's policy ("the BOP") and a workmen's compensation policy ("the WCP") held by the Ardmore Sales Co., Inc. ("the debtor"), during 1980. Home was the insurer of the debtor on both policies. However, on January 5, 1981, Home cancelled the BOP, and on March 30, 1981, it cancelled the WCP.

On or before May 4, 1981, the Roy Paster Corporation ("Paster"), insurance agent for the debtor, received provisional credits for the return premiums from Home for the BOP and the WOP. These provisional return premiums represented monies paid into the BOP and WCP but unused by Home. The provisional credits for the return premiums granted by Home were tentative and were subject to increase or decrease upon completion of a final audit by Home.

On May 4, 1981, Paster paid to Thico the return premium which it received for the debtor, amounting to $2,878.00. This debt was paid by Paster, as the debtor's agent, based on the provisional credit for the return premiums granted by Home to Paster.

The final audits of the WCP and BOP occurred on July 2, 1981 and August 7, 1981, respectively. On August 24, 1981, an involuntary petition for relief was filed against the debtor. On January 25, 1982, the debtor [2] filed a complaint seeking to avoid the transfer of the $2,878.00 pursuant to section 547(b) of the Code.

The sole issue before us is the determination of the date of the transfer of the $2,878.00 for the purpose of section 547(b). There is no dispute that the check was drawn, presented for collection and honored outside the 90 days immediately preceding the date of the filing of the petition (N.T. 6/8/82 at 2). The debtor relies exclusively on the theory that the completion of the final audits on each policy were the occurrences that perfected the transfer of the $2,878.00 to Thico, thereby bringing the date of the transfer within the 90 day preferential period. None of the authorities cited by the debtor supports this contention nor does independent research reveal any authoritative text or decision that sustains the debtor's position.

For purposes of the Code, " 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." 11 U.S.C. § 101(40). There is no argument that the payment of the $2,878.00 by the debtor to Thico constitutes a transfer within the meaning of section 101(40). Once a transfer is found to exist, section 547(b) provides five (5) criteria which must exist in order for the debtor to avoid such transfer.[3] These criteria are: (1) the transfer must have been to or for the benefit of a creditor, (2) for or on account of an antecedent debt, (3) made while the debtor was insolvent, (4)

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

**2.** 11 U.S.C. § 1107(a) gives a debtor in possession substantially the same powers that a trustee has under the Code.

**3.** Section 547(c) sets forth six specified transfers which the trustee may not avoid. None of these exceptions are applicable to the present situation.

made on or within ninety days before the date of the filing of the petition, if the creditor was an insider at the time of the transfer and had reasonable cause to believe that the debtor was insolvent; and (5) which transfer enabled the creditor to receive more than it would have received under the distribution provisions of the Code.[4]  11 U.S.C. § 547(b); *In re Gruber Bottling Works, Inc.,* 16 B.R. 348, 351 (Bkrtcy.E.D.Pa.1981). Only element (4) of § 547(b) is presently at issue in the case at bench.

It is generally held that payment of a debt by check constitutes a transfer under the Code as of the date of payment rather than as of the date of delivery. 3 *Collier on Bankruptcy* ¶ 60.14 at 820 (14th ed. 1977); *Matter of Duffy,* 3 B.R. 263 (Bkrtcy.S.D.N.Y.1980). As previously mentioned, there is no dispute that both the delivery and the payment of the check occurred outside of the 90 day preferential period. Instead, the debtor argues that the transfer of the $2,878.00 must be deemed to have been made on the dates of the final audits, which occurred *within* the 90 day period, rather than on the date of the actual payment of the $2,878.00, which occurred *outside* of said period.

■ For purposes of § 547(b), a transfer is made at the time such transfer is perfected. 11 U.S.C. § 547(e)(2)(B). Under section 547(e), the determination of when a transfer is perfected depends on state law. 4 *Collier on Bankruptcy,* ¶ 546.46[1] at 547–136 (15th ed. 1982). In addition, § 547(e)(1)(B) provides that "a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). In other words, a transfer did not occur in the instant case until Thico, as payee, acquired an interest in the $2,878.00 superior to that of a lien creditor of the debtor. We conclude

that Thico acquired a superior interest in the $2,878.00 when the bank accepted the check and paid Thico. Section 3410(a) of the Pennsylvania Commercial Code provides that "[a]cceptance is the signed engagement of the drawee to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification." 13 Pa.Cons.Stat. Ann. § 3410(a) (Purdon Pamphlet 1982). Hence, at that point,—when the bank accepted the check and paid Thico,—a lien creditor of the debtor could not defeat Thico's interest in the $2,878.00 and, therefore, the transfer occurred at that instant. *See In re Sportsco Inc.,* 7 B.C.D. 1025 (Bankr. Ariz.1981). Consequently, we conclude that, under Pennsylvania law, as reflected in § 3410(a), *supra,* the transfer of the $2,878.00 from the debtor to Thico was perfected outside the 90 day period preceding the filing of the petition and, consequently, the transfer also took place outside the 90 day preferential period.

Although the provisional credits for the return premiums granted by Home to the debtor were subject to increase or decrease upon completion of the final audits and although the payment of the $2,878.00 to Thico was based on the provisional credit for the return premiums granted by Home to Paster, no evidence has been presented which indicates that the final auditing would have had any direct effect on the payment by the debtor to Thico. In other words, the record suggests that the final auditing affected only the rights and liabilities of Home and the debtor against each other. The payment of the $2,878.00 was in satisfaction of an independent obligation owed by the debtor to Thico separate from any obligations existing between Home and the debtor regarding the provisional credits for the return premiums. Logically then, it appears to us that any right that Home may have had to demand the return of any or all of the $2,878.00 paid to Thico, was a right of action against the debtor and its

---

4. The burden of proof to establish each of the elements in § 547(b) by a preponderance of the evidence rests with the trustee. *In re Denaburg,* 7 B.R. 274, 275 (Bkrtcy., N.D. Ala. 1980).

*See also American Nat'l Bank & Trust Co. v. Bone,* 333 F.2d 984, 987 (8th Cir. 1964); *Mizell v. Phillips,* 240 F.2d 738, 740 (5th Cir. 1957).

agent,—not a right against Thico. In any event, the law, as heretofore pointed out, is clear and the transfer of the $2,878.00 by the debtor to Thico was perfected outside the 90 day preferential period and therefore, was not a voidable transfer.

Finally, the debtor argues that the audits themselves were transfers within the meaning of the Code. Assuming, arguendo, that the debtor is correct in so maintaining, these "transfers," it seems to us, would have no legal bearing on the $2,878.00 transfer by the debtor to Thico,—a sum: (1) unconditionally[5] transferred to Thico; (2) in satisfaction of an independent anteced-ent obligation owed by the debtor to Thico; and, most importantly, (3) perfected and, therefore, deemed made, pursuant to section 547(e)(2)(B), outside of the 90 day peri-od preceding the filing of the petition.

Based on all the above, we will deny the debtor's complaint to avoid the transfer of the $2,878.00.

---

**5.** While the provisional credits for the return premiums granted by Home were tentative and subject to increase or decrease upon comple-tion of a final audit by Home, there is no indication in the present record that the specif-ic $2,878.00 payment to Thico was in any way tentative or conditional. On the contrary, the delivery of the check to Thico was uncondition-al and the $2,878.00 was not placed in escrow. Nor were there any similar precautions taken to hinder Thico's right to the $2,878.00.