ALBERT J. HENDERSON, Circuit Judge:
 

 The appellant, First Investment Company (“First Investment”), appeals an adverse decision of the United States District Court for the Northern District of Georgia setting aside a transfer of funds from the bankrupt, Carolee’s Combine, Inc. (the “Combine”) to First Investment and returning the funds to the bankrupt’s estate. The district court concluded that the trustee was entitled to void the transfer on several independent statutory grounds under the Bankruptcy Act of 1898. 11 U.S.C. §§ 96, 107 & 110 (1976) (repealed).
 
 [1]
 
 We agree that the payment constituted a voidable preference under Section 60 of the Bankruptcy Act, 11 U.S.C. § 96, and affirm the judgment of the district court.
 
 [2]
 

 Carolee W. Davies formed the Combine, a Georgia Corporation, for the purpose of conducting an architectural antiques auction in October, 1976, in Atlanta, Georgia. In preparation for the auction, the Combine acquired merchandise such as old building components and transported the items to Atlanta for restoration. Davies secured financing for this enterprise through both corporate and personal loans.
 

 In making arrangements for the auction, Davies obtained two loans totaling $40,-000.00 from First Investment. The promissory notes evidencing the indebtedness in both instances obligated Davies personally rather than the Combine. Davies also granted First Investment a security interest in Combine assets. The loan transactions took place in Nebraska, First Investment’s place of business. William Beltzer, the president of First Investment, had been involved in previous architectural antique auctions conducted by Davies and her husband, R.D. Davies, and authorized the financing for the Atlanta auction. Mrs. Davies deposited the funds obtained from First Investment into the Combine’s corporate checking account at the First National Bank of Atlanta.
 

 The auction took place on October 8 and 9,1976. Prior thereto, the Davies and their bookkeeper estimated that the auction needed to generate approximately $800,-000.00 in gross revenues in order to break even. Unfortunately, the auction did not meet these expectations; only $625,000.00 was realized from the sale. However, loan repayment checks drawn on the Combine account were mailed to many creditors, including First Investment, on the first day of the auction.
 

 On October 15, 1976, Beltzer telephoned R.D. Davies at the auction site in Atlanta.
 
 *412
 
 Mr. Davies informed Beltzer that a $100,-000.00 error overstating the auction sales income had been discovered. After that conversation, Beltzer telephoned Murray Newman, an acquaintance who had invested in the auction upon Beltzer’s advice, and recounted the details of his conversation with R.D. Davies. During this discussion, Beltzer told Newman that he was sending a representative to Atlanta to present the corporate checks for payment at the Combine’s bank. Beltzer offered his assistance to Newman in obtaining repayment and informed Newman that he was considering retaining bankruptcy counsel in Atlanta. First Investment did employ an Atlanta bankruptcy attorney on that day.
 

 Mrs. Davies met with several creditors on October 17, 1976 and disclosed that the Combine would be unable to repay its debts in full. She ordered the bank to stop payment on certain finance charge checks on October 18, 1976. Finally, on October 18, 1976, Robert Arnold, a vice-president of First Investment, came to Atlanta and exchanged the Combine checks for cashier’s checks at the Combine’s bank.
 

 An involuntary bankruptcy petition was filed against the Combine on February 4, 1977. The bankruptcy trustee brought this action against First Investment to set aside the transfer of funds it obtained from the Combine.
 
 [3]
 

 The district court set aside the transfer, stating,
 
 inter alia,
 
 that the payment constituted a voidable preference.
 
 [4]
 
 11 U.S.C. § 96. A preference is defined in the Bankruptcy Act as:
 

 a transfer ... of any of the property of the debtor to or for the benefit of a creditor for or on account of an antecedent debt made by ... such debtor while insolvent and within four months [of the filing of the bankruptcy petition] ... the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
 

 11 U.S.C. § 96(a)(1). A preference is voidable by the trustee in bankruptcy if it can be shown that the creditor had reasonable cause to believe that the debtor was insolvent at the time of the transfer. 11 U.S.C. § 96(b).
 
 See International Minerals & Chemical Corp. v. Moore,
 
 361 F.2d 849 (5th Cir.1966);
 
 Mayo v. Pioneer Bank & Trust Company,
 
 297 F.2d 392 (5th Cir.1961).
 
 [5]
 

 At the outset, we find that the “transfer” occurred when the appellant exchanged the Combine corporate checks for
 
 *413
 
 cashier’s checks on October 18, 1976. The Bankruptcy Act provides that for the purpose of determining whether a preference has taken place,
 

 a transfer of property ... shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee.
 

 11 U.S.C. § 96(a)(2). In the case of a check, the transfer is not completed at the time of delivery. Creditors could prevent collection of the funds through such means as garnishment of the bank account. Although in the non-bankruptcy context, a check honored in the regular course of business relates back to the date of delivery,
 
 see Duke v. Sun Oil,
 
 320 F.2d 853, 861 (5th Cir.1963), under the “so far perfected” language of the Bankruptcy Act, the date of transfer is the date when the check is honored by the paying bank.
 
 Accord, Fitzpatrick v. Philco Finance Corp.,
 
 491 F.2d 1288, 1293 (7th Cir.1974).
 
 Contra, Shamrock Golf Company v. Richcraft Inc.,
 
 680 F.2d 645 (9th Cir.1982).
 

 The appellant concedes that the transfer occurred within four months of the bankruptcy petition and that payment was made on account of an antecedent debt. It argues, however, that the debtor was not insolvent at the time of the transfer, that the payment did not deplete the estate and that it did not have reasonable cause to believe that the debtor was insolvent.
 

 The evidence sufficiently established that the Combine was insolvent at the time of the transfer. The company’s balance sheets as of that date were introduced into evidence and revealed that its liabilities exceeded its assets. On October 17, 1976, the day before the transfer, Mrs. Davies met with four major consignors of auction property and notified them that she would not be able to repay them in full. Prior to the auction, it was estimated that $800,000.00 in revenues were needed before the enterprise could succeed; only $650,000.00 was received from sales. This evidence refutes any notion that the Combine was not insolvent on October 18, 1976.
 

 As the appellant points out, if the transfer did not diminish the bankrupt’s estate, then there could be no preference.
 
 In re Souder,
 
 449 F.2d 284 (5th Cir.1971). However, the evidence established that the transfer did, indeed, deplete the estate. If First Investment had not received the payment, the funds would have remained in the estate subject to the trustee’s lien. Even assuming that Mrs. Davies’ grant of a security interest in Combine assets to First Investment was effective, the interest was not perfected. Under the Bankruptcy Act, the trustee occupies the status of a hypothetical lien creditor. 11 U.S.C. § 110(c).
 
 See, e.g., In re Equitable Development Corp.,
 
 617 F.2d 1152 (5th Cir.1980);
 
 In re Tillery,
 
 571 F.2d 1361 (5th Cir.1978);
 
 In re Clifford,
 
 566 F.2d 1023 (5th Cir.1978);
 
 In re Ludlum Enterprises, Inc.,
 
 510 F.2d 996 (5th Cir.1975);
 
 In re Leggett,
 
 505 F.2d 120 (5th Cir.1974). As such, the trustee may prevail over creditors who are subordinate to lien creditors under state law.
 
 In re Clifford,
 
 566 F.2d at 1025;
 
 In re Ludlum Enterprises, Inc.,
 
 510 F.2d at 999;
 
 In re Manuel,
 
 507 F.2d 990,992 (5th Cir.1975). Under Georgia law, “an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor before the security interest is perfected.” Ga.Code Ann. § 109A-9-301(l)(b) (1979). This analysis confirms that the trustee, as a hypothetical lien creditor, has an interest that is superior to First Investment’s unperfected interest. Therefore, under the so-called “strong arm” provision of the Bankruptcy Act (11 U.S.C. § 110(c)), the trustee could avoid the lien and bring the collateral into the bankrupt’s estate.
 
 See In re Tillery,
 
 571 F.2d at 1366.
 

 Moreover, the record discloses that if the transfer was valid, First Investment would have achieved payment of a larger proportion of its loan than other comparable creditors of the bankrupt corporation. Under the preference provision of the Bankruptcy Act, the trustee must prove that the payment “enable[d] such creditor to obtain a
 
 *414
 
 greater percentage of his debt than some other creditor of the same class.” 11 U.S.C. § 96(a)(1). MacLachlan,
 
 Handbook of the Law of Bankruptcy,
 
 § 256 (1956). Once it is ascertained that a secured creditor is unperfected, as in this case, that creditor is on equal footing with unsecured creditors and falls into the “class” of “general creditors.”
 
 See Azar v. Electric Constructors, Inc.,
 
 293 F.Supp. 33, 36 (M.D.Ala.1967),
 
 aff’d.
 
 405 F.2d 475 (5th Cir.1968).
 
 See also, Glessner v. Massey Ferguson Inc.,
 
 353 F.2d 986, 992 (9th Cir.1965),
 
 cert. denied,
 
 384 U.S. 970, 86 S.Ct. 1859,16 L.Ed.2d 681 (1966);
 
 In re Markham,
 
 254 F.Supp. 948, 959-60 (W.D.Va.1966). Therefore, if the trustee established that First Investment’s full payment is disproportionate to that which other general creditors will receive, the requirement is satisfied.
 

 The district court found that “[g]iven the assets of the estate and the claims filed, the distribution to creditors in the same class as First Investment Company ... will be far less than full payment.” That conclusion is supported by the record. The trustee testified that the estate had assets totaling $58, 268.78 at the time of the trial (Trial Transcript at 68) and that unsecured claims totaling $146,737.40 were filed against the estate. (Trial Transcript at 70). First Investment received full payment, a greater percentage of its debt than will the other general creditors belonging to the same class. This payment clearly depleted the estate.
 

 Because all of the elements of a preference were substantiated, the transfer may be voided by the trustee if at the time of the payment the creditor had reasonable cause to believe that the debtor was insolvent. 11 U.S.C. § 96(b). We have already determined that the transfer occurred on October 18, 1976 — the date the checks were honored by the bank. Therefore, we must focus on the facts known to First Investment on that date.
 

 The district court found that First Investment knew or had reasonable cause to believe that the Combine was insolvent on October 18, 1976. The trial judge based this determination on the evidence showing that immediately after Beltzer learned of the error in the auction result calculations he telephoned Newman offering his assistance in collection of Newman’s loan to the Combine, hired bankruptcy counsel to handle problems arising from the Atlanta auction and arranged for a representative to present the Combine checks for immediate payment.
 

 It is axiomatic that proof of actual knowledge of insolvency is not necessary to void a preference.
 
 See, e.g., Kravetz v. Joange Building Corp.,
 
 341 F.2d 561, 563 (2d Cir.1965). However, because proof of actual knowledge involves a more exacting standard than does proof of constructive knowledge, a showing of actual knowledge of insolvency
 
 a fortiori
 
 satisfies the statutory requirement of reasonable cause to believe that the debtor is insolvent. Therefore, if the trial court finds that the creditor in fact knew that the debtor was insolvent, and that determination is supported by the record, the preference is voidable under Section 60(b) of the Bankruptcy Act.
 
 See, generally, Cooper Petroleum Co. v. Hart,
 
 379 F.2d 777, 780 (5th Cir.1967) (creditor in fact had knowledge of insolvency);
 
 In re Prestige Spring Corp.,
 
 628 F.2d 840, 843 (4th Cir.1980) (same).
 
 Cf. Shaw v. Walter E. Heller & Co.,
 
 385 F.2d 353, 357 (5th Cir.1967),
 
 cert. denied,
 
 390 U.S. 1003, 88 S.Ct. 1248, 20 L.Ed.2d 104 (1968) (creditor knew or had reason to know).
 

 The district judge, sitting as a trier of fact, found that First Investment had knowledge that the Combine was insolvent on the date of the transfer. This is a purely factual determination based upon inferences drawn from Beltzer’s conduct after he spoke' with R.D. Davies and learned of the mistake in the auction sales figures. Consequently, our standard of review is controlled by Rule 52(a) of the Federal Rules of Civil Procedure. That rule stipulates that “[findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.” Fed.R.Civ.P. 52(a).
 
 See also,
 
 
 *415
 
 Bankruptcy Rules of Procedure 810 (1977) (district court must accept bankruptcy referee’s factual findings unless clearly erroneous). That the finding of knowledge of insolvency could be characterized as an “ultimate” fact is irrelevant. As the Supreme Court recently held in
 
 Pullman-Standard v. Swint,
 
 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), Rule 52 makes no distinction between ultimate and subsidiary facts.
 
 [6]
 

 The district court’s finding of actual knowledge was not clearly erroneous. Belt-zer’s reaction to his conversation with R.D. Davies readily supports the inference that he knew of the Combine’s financial condition. At the trial, Beltzer denied that he retained bankruptcy counsel on October 15, 1976. However, when confronted with documentary evidence that he had done so, he admitted that he hired a lawyer to cope with the anticipated problems concerning the Combine. Beltzer also admitted that R.D. Davies had told him that the auction was “not a big success.” Trial Transcript at 84. Beltzer’s telephone call to Newman, a friend whom he had encouraged to invest in the auction, and his offer of assistance in obtaining repayment also is consistent with the conclusion that he knew of the insolvency. The record discloses that when Beltzer realized that he needed to take prompt action in order to protect his investment, he did so. Based upon this evidence, the district court’s finding cannot be labeled clearly erroneous.
 

 For the foregoing reasons, the judgment of the district court setting aside the transfer as a voidable preference is
 

 AFFIRMED.
 

 [1]
 

 . This action was commenced before October 1, 1979, and therefore, the former Bankruptcy Act controls.
 
 In re Cross,
 
 666 F.2d 873 (5th Cir.1982). All citations will be to the “old act” as it was codified in 11 U.S.C.
 

 [2]
 

 . Because we affirm the district court’s judgment for this reason, we do not consider the alternative holdings.
 

 [3]
 

 .The appellant asserts that personal jurisdiction and venue were not proper in the Northern District of Georgia. However, as the district court concluded, in personam jurisdiction over First Investment was validly invoked pursuant to the Georgia long-arm statute. Ga.Code Ann. § 24-113.1. First Investment purposefully transacted business in Georgia — it sent an agent to collect payment in Atlanta and played an active role as an investor in the Atlanta auction. Moreover, we agree with the district court that the interests of justice support the exercise of jurisdiction over the appellant. The Combine has substantial creditors in Georgia; the controversy is best suited to adjudication in one forum. See
 
 Fowler Products Co. v. Coca-Cola Bottling Co. of Tulsa, Inc.,
 
 413 F.Supp. 1339 (M.D.Ga.1976).
 
 Cf. Attwell v. LaSalle National Bank,
 
 607 F.2d 1157 (5th Cir.1979),
 
 cert. denied,
 
 445 U.S. 954, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980). Venue was also correctly found to exist in the Northern District of Georgia. Venue is proper in the district where the cause of action arose. 28 U.S.C. § 1391(b). The trustee’s cause of action is based upon the payment by cashier’s check to appellant in Atlanta. Consequently, First Investment’s challenges to jurisdiction and venue are without merit.
 

 [4]
 

 . For purposes of our examination of the holding that the transfer constituted a voidable preference, we assume that the Combine was obligated on the notes signed by Mrs. Davies personally. The district court found that there was no consideration for the transfer because the Combine’s sole shareholder, rather than the company itself, was obligated on the promissory notes. The appellant urges that this ruling was erroneous under an “identity of interest” theory.
 
 See, e.g., Rubin v. Manufacturers Hanover Trust,
 
 661 F.2d 979 (2d Cir.1981). We do not reach this issue because, even assuming that the Combine was obligated under the
 
 Rubin
 
 analysis, the transfer nevertheless would be voidable as a preference.
 

 [5]
 

 . In
 
 Bonner v. City of Prichard,
 
 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.
 

 [6]
 

 . The finding of actual knowledge of insolvency does not involve the application of a legal principle to established facts. The former Fifth Circuit Court of Appeals has held that review of the finding that certain facts give rise to reasonable cause to believe that the debtor is insolvent is not restricted by the clearly erroneous test because it requires the court to determine whether legal standards are met.
 
 See, e.g., Electric Constructors, Inc. v. Azar,
 
 405 F.2d 475, 476 (5th Cir.1968);
 
 Shaw v. United States Rubber Co.,
 
 361 F.2d 679, 682 (5th Cir. 1966);
 
 Clower v. First State Bank of San Diego, Texas,
 
 343 F.2d 808, 810 (5th Cir.1965); Mayo
 
 v. Pioneer Bank & Trust Co.,
 
 297 F.2d 392, 395 (5th Cir.1961).
 
 But see, Brunson v. First National Bank of Bryan,
 
 405 F.2d 1193 (5th Cir.1969) (rejecting notion that constructive knowledge of insolvency is a legal question for the court). In
 
 Pullman Standard v. Swint,
 
 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), the Supreme Court explicitly left open the question whether a clearly erroneous standard of review should also be applied when the trier of fact applies legal principles to established facts and noted that the circuits were split on this question.
 
 Id.
 
 at 289, n. 19, 102 S.Ct. at 1790, n. 19, 72 L.Ed.2d at 80, n. 19.