EDWIN E. ARMSTRONG *v.* SIMEON STOVALL.

A party cannot claim a right in behalf of his intestate, founded upon the fraud of such intestate.

The statute of frauds of this State has no application to cases of hiring, but applies to cases of pretended loans of chattels, " the possession whereof shall have remained in another by the space of three years without demand," &c. Hutch. Code, 638, § 2.

The statute of frauds does not require the registration of the conveyance of property therein mentioned, where the possession " remains with the donee or bargainee."

A *feme covert* may execute a mortgage jointly with her husband, to charge her separate estate with the individual debts of her husband. *Sessions et ux.* v. *Bacon,* 1 Cushm., cited and confirmed.

The practice of signing deeds grew up under the requirements of the statute of 29 Charles 2, c. 3, and the registration acts; but did not prescribe the manner of signing; and all that seemed to be required by their policy, was that the instrument should be signed by the party in such a manner as to show that he intended it as his act and deed.

The most essential and efficacious act to give it validity, was the delivery.

A memorandum or indorsement written on a deed at the time of its execution, becomes a part of the deed. *Baldwin* v. *Jenkins,* 1 Cushm. 207, cited and confirmed.

ON appeal from the northern district chancery court at Carrollton; Hon. Henry Dickinson, vice-chancellor.

The opinion of the court contains a sufficient statement of the facts of the case.

*D. Shelton,* for appellant,

Contended the decision of the vice-chancellor was erroneous, and to sustain his position cited and commented on 7 Ves. Ch. R. 470; 10 Mass. 276; 3 Page, 154; 6 Johns. Ch. 111; 2 Cow. 147; 13 S. & M. 338; 1 Johns. Ch. 478; 4 Ib. 536; 13 S. & M. 348; Ib. 631; 3 Ib. 560; 1 Ib. 66; 7 Leigh, 88; 5 Munf. 305; 3 Johns. C. 371; 18 Ib. 515; 1 Ib. 574; 7 S. & M. 64; Ib. 68; Ib. 77.

*Glenn,* for appellee, filed no brief in the case.

Mr. Justice HANDY delivered the opinion of the court.

The appellee filed his bill in the district chancery court at Carrollton, stating that in February, 1846, he was the owner of three slaves, which he then sold on a credit to Mary Jenkins, wife of Edmund Jenkins, took her notes with another as surety for the purchase-money, and, as a part of the same transaction, and at the same time, a deed in trust was executed by the parties, with the written consent of the husband of Mary Jenkins subjoined thereto, appointing a trustee to sell the slaves for the payment of the purchase-money, if it should not be paid at maturity, and containing a stipulation to the following effect, that a proceeding being then pending in court between the Farmers and Merchants Bank of Memphis, plaintiff, and Stovall, as claimant, for the trial of the right of property in the slaves, it was agreed that if that suit should be determined against Stovall, then the sale and conveyance to Mary Jenkins was to be void, and she was to return the slaves immediately to Stovall, and he was to return her notes. The deed further reserved a lien on the slaves for the purchase-money. The bill further states, that possession of the slaves was delivered to Mary Jenkins, who is since deceased, and no representative of her estate has been appointed; that she had possession of the slaves during her life, and after her death her husband, Edmund Jenkins, had them in possession; that he is dead, and they are now in possession of the appellant, Armstrong, his administrator, who claims to hold them in that capacity and refuses to deliver them up; that the surety on the notes of Mary Jenkins is dead and insolvent; and that the suit of the Farmers and Merchants Bank was determined in favor of Stovall. Before answer an amended bill was filed, stating that the suit was decided in favor of the Farmers and Merchants Bank, and that Stovall elected to pay the value of these slaves to the bank, and to permit Mary Jenkins to retain them under the provisions of the trust deed.

The prayer is for the appointment of a new trustee in the place of the original trustee deceased, and for a sale of the slaves in virtue of the trust deed, to pay the notes due Stovall.

Armstrong answers, alleging that the slaves were purchased by Stovall for the benefit of Edmund Jenkins, and to hinder,

delay, and defraud his creditors; that Jenkins had the right to redeem them, as between him and Stovall; and setting up a mortgage executed in 1850 to him, Armstrong, personally, to secure a sum of money advanced by him for Jenkins, which mortgage was taken without notice that Stovall had any claim upon the slaves.   He neither admits nor denies the payment by Stovall of the value of the negroes on the bank claim, nor the permission to Mary Jenkins to retain possession of them, as stated in the amended bill.   The heirs at law of Mary Jenkins answer, that they know nothing in relation to the matter, and require strict proof of all the allegations of the complaint. The chancellor appointed a new trustee, and decreed a sale of the slaves, as prayed for; from which decree this appeal is prosecuted.

1. The first point raised in behalf of the appellant is that the purchase by which Stovall acquired the slaves was fraudulent as to Jenkins' creditors, and that no party to a fraud will be heard in a court of equity to claim any benefit from it.   It appears from the evidence, that Stovall purchased the slaves at marshal's sale in 1844 for the benefit of Jenkins, the defendant in the execution, and that the purchase was held fraudulent as to the creditors of Jenkins in the trial of the right of property above referred to.   This showed an arrangement fraudulent as to Jenkins' creditors and subsequent purchasers, but it is fraudulent only as against such persons by the express terms of the statute against fraudulent conveyances.   As against Jenkins and his representatives it was valid and unimpeachable; and, therefore, Armstrong, as his administrator, cannot be heard to gainsay it.   Nor can he be heard to claim a right in behalf of his intestate, founded upon the fraud of the intestate.

2. It is contended, in the next place, that if the purchase was not fraudulent and void, the evidence shows that Jenkins had the right to redeem, as it is proved that the complainant made the purchase for his benefit.   Conceding the fact here stated to be true, the administrator of Jenkins has not claimed any such right in his answer, by offering to redeem.   If the right existed, it would have been necessary for him to assert it in a proper manner in his answer, in order to avail himself of it; and hav-

ing failed to do so, the claim will not be indulged when merely set up in argument. But, the right did not exist in point of fact. It is clearly proved by the testimony of Edmund Jenkins himself, taken in the case of the trial of the right of property above mentioned, and admitted as evidence in this case by consent, that the slaves were purchased absolutely by Stovall with his own means, and that Jenkins, after the purchase, had hired them from him, and was indebted to him for the hire; that this was generally known in the neighborhood; that after the sale he agreed with Stovall that he should have the right to redeem the slaves by the 1st June thereafter, which was the only agreement in relation to redemption, but that he failed to realize means to accomplish it; that they remained in his possession under the hiring until the winter of 1846, when he delivered possession of all of them to Stovall, except the three embraced in this suit, which Stovall then sold to Jenkins' wife.

This testimony, coming from Jenkins himself, utterly, precludes him or his administrator from claiming any right of redemption, especially when it is considered that Jenkins was a party to the very sale of the slaves by Stovall to his wife, which is the basis of Stovall's claim in this suit, as will be hereafter noticed.

3. Again. Armstrong sets up against complainant's claim a deed in trust made to him by Jenkins in 1850, to secure him for some six or seven hundred dollars paid by him for Jenkins. He avers that he had no notice of Stovall's claim, and, alleging that the slaves had remained in Jenkins' possession after the marshal's sale for more than three years, he claims that that possession rendered them liable to his claim as a subsequent purchaser under the second section of our statute of frauds and perjuries.

To this claim, the facts of the case furnish several sufficient answers. 1st. The answer admits that he had notice that Stovall had purchased the slaves on the 4th March, 1844, and though they were restored to the possession of Jenkins after sale, Armstrong's knowledge of the fact that Stovall had purchased them was notice in law of his title, because it was at least sufficient to put him on inquiry. 2d. It is apparent from the evidence

that the slaves were hired to Jenkins after the marshal's sale, and until they were sold to Mrs. Jenkins. The statute has no application to a case of hiring; it applies only to a case of pretended loan of chattels, "the possession whereof shall have remained in another for the space of three years without demand," &c. It is shown by the testimony of Jenkins, that it was well known in the neighborhood that he had hired the slaves, so that the injury likely to arise to persons giving credit to him on the faith of his having them in his possession (which was one of the evils intended to be prevented by the statute) could not have occurred. As to the possession after the sale to Mrs. Jenkins, it is shown to have been delivered to her, and the statute does not require registration of the conveyance where the possession "remains with the donee" or bargainee. 3d. The defendant is not a purchaser in the legal sense of the term. He is a mere incumbrancer or creditor by means of his trust deed. He could not, as such, claim more than that his debt should be first paid out of the property, and to that end he should have required that the slaves should be sold. It was both his duty and his interest, if he is acting in good faith, to ask that relief. Yet he does no more than to insist that the property shall not be sold on account of the complainant's claim; and if this position were just and tenable, the slaves, which might be amply sufficient to satisfy the claims of both parties, might be prevented from sale at the pleasure of the defendant, in collusion with the party claiming ownership and having possession of the property.

4. But it insisted that the trust deed or agreement set up in the bill, as the foundation of the complainant's case, has become inoperative and void, by reason of the stipulation contained in it, that it should become void, if the suit of the Memphis Bank should be determined against Stovall, that contingency having occurred. This objection, though imposing at the first view, is obviated by the facts and circumstances of the case. The stipulation was matter of defeasance, which it was competent for the parties to waive, and which it must be presumed from the facts of the case they did waive, without impairing the force of the agreement as to its main object. The

conduct of the parties shows this waiver. It appears that the suit was decided in June, 1846, against Stovall; yet the slaves were not returned to him by Mrs. Jenkins, but were kept by her and her husband for several years afterwards, and as long as they lived. Stovall did not return her notes, as would have been done if the trust deed had been determined, but held them when he filed this bill, and has made them exhibits to it. His attitude in this case tends to the same conclusion. Although he might obtain the slaves absolutely as his property, and thereby be considerably the gainer, if the trust deed is annulled, as the slaves are worth considerably more than the amount of his claim, yet he treats the trust deed as in force, and seeks only the money agreed to be paid for the slaves in 1846. These facts are irreconcilable with the supposition, that the trust deed and the sale of the slaves were annulled; and they tend strongly to establish the facts stated in the amended bill, that Stovall paid off the bank claim, and permitted Mrs. Jenkins to keep the slaves, under the security which the trust deed afforded him. And it is worthy of remark, that the defendant makes no answer to this statement, when it is highly probable, from his connection with the family, that he must have known whether or not it was true. Under these circumstances, we cannot hold that the chancellor erred in considering the contract of sale of the slaves and the trust deed in force, and continuing by the act of the parties.

5. The last ground of error urged is, that the deed in trust is void, because her husband did not join in it, nor in the notes given for the purchase-money of the slaves.

It is settled by this court, that a *feme covert* may execute a mortgage *jointly with her husband*, to charge her separate estate with the individual debt of her husband. *Sessions et ux.* v. *Bacon et al.* 1 Cushm. 272. And with much greater reason may such a mortgage be made for a valuable consideration received by her, when it is a part of the contract of purchase of the same property, and affects that property alone, as was the case here. That contract would not be void to all intents and purposes, but only at the election of the wife, and if it was beneficial to her, she might treat it as valid. It is immaterial,

therefore, whether the husband and wife joined in the notes. They are distinctly set out in the trust deed, and that would be sufficient evidence of the indebtedness, if the trust deed was executed by them jointly, especially as it was a part of the contract of the purchase. Was this deed, then, jointly executed by the husband and wife? His name is not signed immediately at the conclusion of it; but immediately after the signature of the wife is the following: " I, Edmund Jenkins, husband of the said Mary Jenkins, do hereby consent to the above obligation of my wife. Witness my hand and seal, this 10th day of February, 1846.         Edmund Jenkins." [Seal.]

Then follows the acknowledgment of the husband and wife, made at the same time and before the same officer, who certifies " that the said Edmund Jenkins acknowledged that he signed, sealed, and delivered the foregoing instrument of covenant as his act and deed, on the day and year therein mentioned."

Anciently, sealing and delivery were necessary to a deed, but it was not essential that it should be signed, nor was the sealing required to be on any particular part of it. 2 Coke, Litt. 234, and notes. 2 Bl. Comm. 305. Afterwards the practice of signing grew up under the requirements of the statute of 29 Charles 2, ch. 3, and the registration acts. But these statutes did not prescribe the manner of signing, and all that seems to have been required by their policy was, that the instrument should be signed by the party in such a manner as to show that he intended it as his act and deed. The most essential and efficacious act to give it validity was the delivery, because that more clearly showed that he intended it as his deed; and accordingly, it is said that if one signs and seals a deed, and another delivers it as his act and deed, the latter thereby adopts and makes it his deed. 2 Bl. Comm. 307. Here there was a signing and sealing written upon the deed, and on its face, immediately below the signature of the wife. It is held, that a memorandum or indorsement written on a deed at the time of its execution, becomes a part of the deed. 8 T. R. 483; 12 Mass. 456; and this has been fully sanctioned by this court in *Baldwin* v. *Jenkins*, 1 Cushm. 207.

24*

But the acknowledgment of the deed by the husband removes all doubt upon this point. It explains the act which without it might have been doubtful, by a contemporaneous declaration that he intended to sign, seal, and deliver it as his act and deed, and this affords the best exposition of its character.

We are, therefore, of opinion that this deed was jointly executed by the husband and wife, and that it is sufficient under our laws to charge the property mentioned in it.

The decree of the chancellor is therefore affirmed.

FISHER, J., having been counsel in the court below, gave no opinion.