R. B. Templeman v. S. E. and W. S. Gibbs.

No. 77.

**1. Fact Case—Loan—Reservation or Limitation.**

In 1885, Templeman entered into an oral agreement with the wife of A. J. Ward by which he delivered to her, upon her farm in Texas. 239 head of sheep, which were put with 172 head of sheep, the separate property of Mrs. Ward, in a common flock. Templeman having more sheep than Mrs. Ward, their interests were equalized by the care, control, and keeping of the sheep by her. They became equal owners of the flock, each owning an undivided one-half interest thereof. The

proceeds of the wool and the profits were to be equally divided between the parties. The sheep remained on the farm and were in the possession of A. J. Ward for more than two years. Templeman's interest in the proceeds of the wool was accounted for annually. September 2, 1891, the sheep were levied upon and sold as the property of the husband, A. J. Ward. Gibbs & Gibbs were the purchasers....... 360
    In contest between Templeman and the purchasers, *Held:* 1. The intention was to make the combined flock common property of the contracting parties, and that each should share equally in profits resulting from it. The contract when executed made the combined flock common property of Mrs. Ward and Templeman, and made them tenants in common...................................................................... 362
    2. The contract did not show a loan by Templeman................. 361
    3. From such a contract and such relation no reservation or limitation by way of condition, reversion, remainder, or otherwise could arise, whether these words be used in a technical or in any popular sense...................................................................... 363
    4. The increase and profits of Mrs. Ward's share became subject to debts of the husband, as community property........................ 363

**2. Loan—Statute Construed.**
    The transaction referred to in article 2468, Revised Statutes, as a loan, is evidently one in which the owner places some specific thing in the hands of a borrower to be used by him without compensation, but at some future time to be returned......  ............................. 361

**3. Same—Reservation or Limitation.**
    Both these words "reservation or limitation," as used in article 2468, Revised Statutes, imply a divestiture of title, partial or entire, of the person who creates the reservation or imposes the limitation. The words are more frequently defined in their relation to real property, or some right growing out of it, yet the same meaning may be given them when used in relation to goods and chattels..................... 362

**4. Same.**
    As used in the statute, article 2468, the word *reservation* necessarily applies to the real or pretended right or interest of the owner out of possession; while the word *limitation* must apply to the restriction, real or pretended, on the right of the person in possession to the property or its use ................................................................ 362

CERTIFIED QUESTIONS from Court of Civil Appeals for First District, in an appeal from Walker County.

*McKinney & Hill* and *H. H. Boone*, for Templeman. — 1. The facts do not show a loan of the sheep to A. J. Ward, or that they were placed in his possession with any reservation or limitation pretended to have been made of their use by way of condition, reversion, remainder, or otherwise.

2. The facts show that they were placed in the possession of Mrs. Ward on her separate land, to be united with a flock of sheep, her own separate property, for the joint use of Mrs. Ward, in her own separate right, and appellant Templeman, and so remained until the death of Mrs. Ward in September, 1890; and that until her death A. J. Ward's possession was

only such as the husband has of the separate property of the wife, and raised no presumption of ownership by him. Rev. Stats., art. 2468; Moore v. Aldrich, 25 Texas Supp., 276; Gamble v. Dabney, 20 Texas, 69.

*Campbell & Bell* and *Hume & Kleberg*, for Gibbs & Gibbs. — The facts showed that the sheep were subject to the debt of A. J. Ward. Sayles' Civ. Stats., art. 2468; Bank v. Tufts, 63 Texas, 116; Rev. Stats., art. 3190a; Sinker, Davis & Co. v. Comparet, 62 Texas, 475; Grumbles v. Sneed, 22 Texas, 578; Lott v. Bertrand, 26 Texas, 663; Arnold v. Beene, 30 Texas, 15; Neale v. Sears, 31 Texas, 115; Gay v. Hardeman, 31 Texas, 252.

STAYTON, Chief Justice. — The statement and questions arising thereon certified by the Court of Civil Appeals are as follows:

" In the fall of 1885 the appellant entered into an oral agreement with Mrs. M. J. Ward, the wife of A. J. Ward, by which he delivered to her, upon her farm in Walker County, 239 head of sheep, which were put with 172 head of sheep, the separate property of said M. J. Ward, in a common flock; and appellant having more sheep than Mrs. Ward, their interests were equalized by the care, control, and keeping of the sheep by Mrs. Ward, and they became equal owners of the flock, each owning an undivided one-half interest thereof, and the proceeds of the wool and the profits were to be equally divided between the parties. Said sheep remained on said farm, and were in possession of A. J. Ward, for more than two years. Templeman's interest in the proceeds of the wool was accounted for annually.

" On September 2, 1891, appellee caused said sheep to be levied on and sold as the property of A. J. Ward, by virtue of an execution issued upon a judgment in favor of Sanford Gibbs, the testator of the appellee S. E. Gibbs, against the said A. J. Ward, and appellant has sued to recover damages for such seizure and sale."

*Questions.*—" 1. Was there such a reservation of use or property in said sheep as to require the agreement with regard to their possession to be made in writing and recorded, as provided by article 2468 of the Revised Statutes?

" 2. Does the transaction come within the statute of frauds?"

The statute first referred to provides: " Where any loan of goods or chattels shall be pretended to have been made to any person with whom, or those claiming under him, possession shall have remained for the space of two years without demand made and pursued by due process of law on the part of the pretended lender; or when any reservation or limitation shall be pretended to have been made of a use of property, by way of condition, reversion, remainder or otherwise in goods and chattels, the possession whereof shall have remained in another as aforesaid, the same

shall be taken, as to the creditors and purchasers of the persons aforesaid so remaining in possession, to be fraudulent within this chapter, and that the absolute property is with the possession, unless such loan, reservation, or limitation of use of property were declared by will, or by deed or other instrument in writing, duly acknowledged, or proved and recorded."

The transaction referred to in this statute as a " loan " is evidently one in which the owner places some specific thing in the hands of a borrower, to be used by him without compensation, but at some future time to be returned; and it is clear that the transaction stated was not a loan, either real or pretended, for it was not contemplated that the specific property should be returned, nor that the use of it should be gratuitous.

The intention was to make the combined flock common property of the contracting parties, and that each should share equally in profits resulting from it.

The statute referred to was the same, except as to the period possession should continue, as a statute enacted in Virginia as early as 1785; and the courts of that State have limited the operation, as was proper, of the first clause to cases of loans.

It was held that the possession of slaves for the time prescribed by the statute did not render them subject to seizure and sale for debt of the possessor, who was a bailee for hire. McKenzie v. Macon, 5 Gratt., 379.

The second clause of the statute seems to have received but little consideration from the courts of Virginia or of the other States that have adopted that statute, and it must be construed without the aid of decisions of such courts, in view of the words of the statute and of the general purpose for which it seems to have been enacted.

It was not the purpose of the Legislature to make goods or chattels owned by one person subject to seizure and sale for the debt of another in all cases in which the owner might permit them to remain for the prescribed period in the possession of the person indebted, without written evidence, recorded, of the right of the real owner.

The purpose was to render them so subject only when they were so possessed under the circumstances pointed out in the statute.

When held as a loan was one of the instances, and when possessed subject to a reservation or limitation of a use of the property were the others.

The property in question was not held as a loan. Was it held, under the statement, subject to a reservation. or limitation, made or pretended to have been made, of a use of the property ?

If the words "reservation" and "limitation" be used in their ordinary sense when found in such a connection, it is evident that the statement shows neither a reservation or limitation of property or use of property.

Both words imply a divestiture of title, partial or entire, of the person who creates the reservation or imposes the limitation. The words are most frequently defined in their relation to real property, or some right growing out of it, and they are seldom used in regard to goods or chattels; but so far as they can be applied to personal property, no reason is seen why the same meaning should not be given to them as is when they are used in relation to realty.

" By a reservation a new right is created in the thing granted, which did not previously exist, and is reserved to the grantor. Of reservations, rights of way or rent are common illustrations. By the deed the whole estate is deemed to pass to the grantee, who then conveys to the original grantor the new right or estate created by the reservation, which is thus an implied grant." Perkins v. Stockwell, 131 Mass., 530; Kister v. Reeser, 98 Pa. St., 5; 2 Blacks., 299; 4 Kent, 468; 3 Washb., 470.

Words in a deed restricting duration of an estate created by it are said to impose a "limitation," which may be conditional or collateral.

If the conveyance gives an interest for a prescribed period, but makes the right to possess or enjoy the thing conveyed to depend upon some collateral event, then the limitation is said to be collateral; but if the estate is expressly so restricted by the instrument creating it that it can not endure after the happening of the contingency upon which the estate or interest, by the terms of the instrument, is to cease, then the limitation is said to be conditional.

As used in the statute, the word "reservation" necessarily applies to the real or pretended right or interest of the owner out of possession; while the word "limitation" must apply to the restriction, real or pretended, on the right of the person in possession to the property or its use.

Under the facts existing in Bank v. Tufts, 63 Texas, 116, and Sinker, Davis & Co. v. Comparet, 62 Texas, 475, it was held that the statute applied.

These, however, were cases of conditional sales, in which the property was placed in possession of vendees to use as their own, and of which they were to become owners if they paid the purchase money in accordance with the contract of sale.

In such cases the buyer acquires an interest, defeasible though it be, and the seller's right to repossess depends on a condition.

By recent statute such transactions are declared to be chattel mortgages, and subjected to the same rules and requirements in order to protect the sellers against creditors of and bona fide purchasers from the buyers. Sayles' Civ. Stats., art. 3190a.

The contract shown by the statement made the combined flock the common property of Mrs. Ward and Templeman, and constituted them tenants in common.

From such a contract and such relation no "reservation" or "limita-

tion,'' by way of condition, reversion, remainder, or otherwise, could arise, whether these words be used in a technical or in any popular sense.

No reservation or limitation of the use of the property existing, the statute has no application, and courts have no right or power to apply it to a state of facts not contemplated.

Increase of the common flock would be held by Mrs. Ward and her husband and Templeman as tenants in common; but the community interest therein held by the former would be subject to the payment of the debts of the husband, as would be other community property.

The transaction stated does not come within the statute of frauds.

Delivered January 25, 1894.