**In the Matter of LUDLUM ENTER-PRISES, INC., Bankrupt.**

**AMERICAN INDUSTRIAL LEASING COMPANY, Appellant,**

v.

**David S. SEARLES, Trustee, Appellee.**

No. 74–1270.

United States Court of Appeals, Fifth Circuit.

April 7, 1975.

Jeanne Heyward, Miami, Fla., Eugene L. Heinrich, Ft. Lauderdale, Fla., Donald E. Egan, Chicago, Ill., for appellant.

Jeffry R. Jontz, Orlando, Fla., for I.B.M., amicus curiae.

Herb Stettin, Miami, Fla., for appellee.

Before BELL, AINSWORTH and RO-NEY, Circuit Judges.

RONEY, Circuit Judge:

The bankruptcy court decreed the Trustee in bankruptcy of a bankrupt lessee to be the owner of leased restaurant equipment for bankruptcy purposes against the claim of ownership by the lessor, where the lease had not been recorded and possession had been with the bankrupt over two years. The court relied on Florida Statutes § 726.09 concerning fraudulent loans. Since this district court is the first state or federal court ever so to apply this 150-year old Florida statute to a lease of personal property, this case is of first impression in this Court. Holding that Florida Statutes § 726.09 does not apply to bona fide leases of personal property and does not operate to cut off the ownership interest of the owner who fails to record the lease, we reverse.

There is no material controversy as to the controlling facts and for the purpose of this opinion we can simplify them by omitting details that might otherwise be favorable to the appellant but which are not relevant to our decision. American Industrial Leasing Company leased certain restaurant and kitchen equipment to the bankrupt. At the time of bankruptcy, the equipment had been installed for more than two years on the Ramada Inn premises owned by the bankrupt. The written lease agreement was not recorded in any public records.

An involuntary petition in bankruptcy was filed on December 10, 1971, against Ludlum Enterprises, Inc., and thereafter an adjudication in bankruptcy was entered, based upon an amended involuntary petition in bankruptcy filed on May 18, 1972. The Trustee filed his report as required by the local rules for a determination of the validity, priority, and amount of liens claimed by creditors against the estate. American Industrial Leasing Company asserted a claim of ownership against the restaurant property it had leased, which was in possession of the bankrupt by virtue of the lease agreement.

The bankruptcy judge held, first, that the agreement was in fact a lease rather than a security agreement and second, that because the property had remained in the possession of the bankrupt for a period of two years prior to the filing of the petition in bankruptcy and there had been no recordation of the lease agreement itself, the provisions of § 726.09, Florida Statutes, had been violated. The Trustee as "strong-arm" creditor was, therefore, entitled to assert a superior interest in the property to that claimed by American. See 11 U.S.C.A. § 110(c).

On review the district court agreed with the bankruptcy judge deciding first, that Florida Statutes § 726.09 applied to leases of personal property, second, that § 726.09 as it related to leases, was not impliedly repealed by the Florida version of the Uniform Commercial Code, and third, that certain financing statements filed by American did not satisfy the recording requirements of § 726.09.

There being no doubt as to possession being with the bankrupt for two years and that the lease was not recorded, the controlling question is whether Florida Statutes § 726.09 applies to the lease of personal property. The statute provides:

726.09 Fraudulent loans void

When any loan of goods and chattels shall be pretended to have been made to any person with whom or those claiming under him, possession shall have remained for the space of two years without demand and pursued by due process of law on the part of the pretended lender, or where any reservation or limitation shall be pretended to have been made of a use or property by way of condition, reversion, remainder or otherwise in goods and chattels, and the possession thereof shall have remained in another as aforesaid, the same shall be taken, as to the creditors and purchasers of the persons aforesaid so remaining in possession, to be fraudulent within this

chapter, and the absolute property shall be with the possession, unless such loan, reservation or limitation of use or property were declared by will or deed in writing proved and recorded.

Appellant American, the lessor of the property, contends that Florida Statutes § 726.09 applies to "loans," not leases, and therefore, the "absolute property" does not go with the possession but remains with the owner. Neither party was able to cite this Court to any reported Florida court decision applying or refusing to apply this ancient statute to a lease of tangible personal property. Our own independent research uncovered one short Florida Supreme Court case which arguably appeared to apply this section to a lease of personal property, Dixon Lumber Co. v. Jennings, 63 Fla. 405, 57 So. 615 (1912). But there the lease was a vehicle of actual fraud and the case is only moderately instructive on the precise issue we face here: whether a pure lease, unattended by any incidents of actual fraud, is subject to Florida Statutes § 726.09 (1973).

 Although the Trustee is given the status of a hypothetical lien creditor under the so-called "strong-arm" clause of the Bankruptcy Act, he must look to state law for a definition of his rights as such creditor. Our role in this case is to define state law. In deciding that Florida law does not defeat the lessor's right to the leased property in this case, we construe § 726.09 by considering first, the wording of the statute itself; second, the title of the statute and the Florida Constitutional provision pertinent to the title; and third, the interpretation given to similar statutes in other states.

 Section 726.09 basically provides that when "any loan of goods and chattels" is made and the possession of the goods has remained in the borrower "for the space of two years without demand," or where "any reservation or limitation" is made of a use or property "by way of condition, reversion, remainder or otherwise in goods and chattels" and the possession is similarly in one

other than the owner for two years, the goods "shall be taken, as to the creditors and purchasers of the persons aforesaid so remaining in possession, to be fraudulent" and "the absolute property shall be with the possession, unless such loan, reservation or limitation of use or property were declared by will or deed in writing proved and recorded." It is easy to see why the Florida courts have consistently applied this statute to conditional sales contracts. The parties and *amicus curiae* cited us many Florida cases concerning conditional sales and chattel mortgages. *See* Dillon v. Mizell Live Stock Co., 66 Fla. 425, 63 So. 824 (1913); Onyx Soda Fountain Co. v. L'Engle, 53 Fla. 314, 43 So. 771 (1907); Hudnall v. Paine, 39 Fla. 67, 21 So. 791 (1897); Campbell Printing Press & Manufacturing Co. v. Walker, 22 Fla. 412, 1 So. 59 (1886); White v. County Mortgagee Corp., 211 So.2d 254 (Fla. App.1968); Rood v. Miami Air Conditioning Co., 193 So.2d 216 (Fla.App.1966); Maas Brothers, Inc. v. Guaranty Federal Savings & Loan Assoc., 180 So.2d 195 (Fla.App.1965); Dade National Bank of Miami v. University Transfer & Storage, Inc., 151 So.2d 868 (Fla.App.1963); Richardson Tractor Co. v. Square Deal Machinery & Supply Co., 149 So.2d 388 (Fla. App.1963). Such contracts clearly fall within the statute's second prescription. Such a contract is a "reservation . . . made of . . . property by way of condition, . . . [to] goods and chattels, and the possession thereof" has remained, when the statute has been found to apply, in a person other than the title holder. It is equally clear to us that a lease does not involve such a condition on the title to the property, nor does it involve a reversion, remainder or any other similar future interest, legal or equitable. *See* Templeman v. Gibbs, 86 Tex. 358, 24 S.W. 792 (1894); Black's Law Dictionary 1483, 1456 (rev. 4th ed. 1968). The lessor owns the *only* legal and equitable title in the property, subject only to the lessee's right to possession for the lease term. This right to possession does not give the lessee any legal or equitable title in the property subject to the lease, and under no cir-

cumstance can the lessee himself cut off the lessor's interest in the property. A lease simply is not an interest of the same character as conditional title, reversions or remainders, and the portion of the statute covering those type interests does not apply to a lease. Templeman v. Gibbs, 86 Tex. 358, 24 S.W. 792 (1894). Consequently, if a lease transaction is to be brought within the statute, it must be under the first clause relating to "any loan of goods and chattels."

The Florida legislature, when it intended to declare a lease fraudulent as against creditors, used the term "lease." See Fla.Stat. §§ 726.01, 726.07 (1973). Yet in § 726.09 it referred to a "loan" not a "lease." The words are not coextensive and it seems only reasonable that had the Florida legislature intended § 726.09 to apply to a lease it would have said so. The fundamental difference between conditional sales contracts and leases has been noted in the Uniform Commercial Code, Fla.Stat. 671.1–201(37) (1973).

The only Florida case we found shedding any light on this question, Dixon Lumber Co. v. Jennings, 63 Fla. 405, 57 So. 615 (1912), appears to support the conclusion that this statute does not apply to leases. In *Dixon Lumber*, Perkins, the original owner of a locomotive engine, sold it to Dixon Lumber Co., but retained possession under a lease-back "for more than two years after its alleged sale to Dixon Lumber Company, with apparently no visible indicia of ownership or right in another." 63 Fla. at 407, 57 So. at 616. The lease had not been proved for record in accordance with the statute. Perkins subsequently executed a chattel mortgage to Jennings. Jennings foreclosed his mortgage, and Dixon Lumber Co. sought to claim the locomotive as its property.

The Florida Supreme Court noted that there was a presumption of actual fraud whenever the vendor of personal property retains possession of it after sale and the vendee had the burden of rebutting that presumption. The court, examining whether the burden had been met,

discussed whether the chattel mortgagee had actual knowledge of ownership or knowledge of any facts which should have made him inquire as to the ownership. One of the cases cited by the Florida Supreme Court, Volusia County Bank v. Bertola, 44 Fla. 734, 33 So. 448 (1902) makes clear the analysis which the court was following in *Dixon Lumber*. The court discussed the standard of review of a chancellor's findings and conclusions, concluding:

> The only real question presented is whether Jennings had any actual notice that the title to the engine was, at the time he took the mortgage, in the Dixon Lumber Company. The testimony is quite voluminous, and in some respects conflicting; but there is evidence to sustain the finding of the chancellor in favor of Jennings, and the finding does not clearly appear on the whole evidence to be erroneous. Therefore the decree will not be reversed, but is hereby affirmed.

63 Fla. at 408, 57 So. at 616.

Although *Dixon Lumber* discusses the predecessor of § 726.09 in connection with a lease, the Florida court's use of the statute supports the conclusion that it does not have the controlling effect asserted by the Trustee here. Had the statute applied, the court would have stopped once it concluded that the lessor had not complied with the statute. Even actual knowledge on the part of the mortgagee would not have prevented the statute from operating in his favor. See Hudnall v. Paine, 39 Fla. 67, 75, 21 So. 791, 794 (1897). The applicability of the statute would have rendered unnecessary any discussion of a presumption of actual fraud and the burden of overcoming that presumption, whereas the court's discussion of the statute was aimed at analyzing its possible impact on the mortgagee's actual knowledge of the ownership of the property, not its possible application as the sole grounds for recovery by the creditor mortgagee.

█ The application of the statute to a lease runs contrary to the spirit of the

Florida Constitution, Article III, § 6, which provides in part:

> Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title . . . .

Numerous Florida Supreme Court decisions indicate that the basic requirement of a constitutional act is that the title "must be sufficiently informative to obviate the surprise or fraud that would spring from hidden provisions not indicated in the title." Knight & Wall Co. v. Bryant, 178 So.2d 5, 7 (Fla.1965) citing State v. Florida State Turnpike Authority, 80 So.2d 337 (Fla.1955); *see* 30 Fla. Jur., Statutes, §§ 48–49 (1974). The title to § 726.09 reads very simply, "Fraudulent loans void." There is a significant difference between a loan and a lease, and the application of this "loan" statute to a lease, after one hundred and fifty years of nonapplication, could certainly be a "surprise" to those who would fall prey to the trustee's strong arm. Lessors appear to have relied, and we think rightly so, on the fact that this title addressed loans and not leases. To allow the statute now to be utilized to gain a creditor advantage would seem to contravene the basic purpose of the Florida Constitutional provision. The Florida Supreme Court has itself suggested a strict construction of this statute. *See* Dillon v. Mizell Live Stock Co., 66 Fla. 425, 427, 63 So. 824, 825 (1913). We note that the indices and reference tables to Florida Statutes, Florida Statutes Annotated and Florida Jurisprudence do not reflect this statute as applying to leases of personal property. The argument that loans and leases are identical for the purpose of validating the title to the statute fights against the traditional distinctions that are firmly embedded in Florida law and the general common law.

Other states have construed statutes similar to Florida's contrary to the Trustee's position. At least three states with statutes substantially identical to Florida Statutes § 726.09 have construed them to exclude a "hiring" of goods. The Supreme Court of Mississippi in Armstrong v. Stovall, 26 Miss. 275 (1853), held the predecessor to Miss.Code § 15–3–3 not to apply to "a hiring of goods," *i. e.* a lease transaction. The Supreme Court of Texas, likewise construing a virtually identical Texas statute, Revised Statute article 2468, the predecessor of Vernon's Ann. Civ.Stat. art. 3999, held that a "loan" was a transaction "in which the owner places some specific thing in the hands of a borrower, to be used by him without compensation, but at some future time to be returned; . . . ." Templeman v. Gibbs, 86 Tex. 358, 361, 24 S.W. 792, 793 (1894). That court likewise refused to apply the statute to such a lease. *See* Hunstock v. Roberts, 65 S.W. 675, 676 (Tex.Civ.App.1901). The Court of Appeals of Virginia has also held that its statute, identical to § 726.09, does not apply to situations where the property is bona fide and actually on hire, as opposed to on loan, to the one in possession. M'Kenzie v. Macon, 46 Va. 379, 384 (1849).

At least one authority has considered the Florida fraudulent loan statute and concluded that the statute was not intended to apply to leases. 3 Jones, The Law of Chattel Mortgages and Conditional Sales, section 1016, (6th ed. 1933), cites the fraudulent loan statute as a recording statute of the state of Florida. Later in the treatise at section 1072, Jones comments on recording statutes in general, presumably including the Florida fraudulent loan statute, by saying:

> "It is one of the hardships of the recording statutes that they thus place upon a layman, upon pain of the possibility of losing his property, the burden of making a legal decision as to the necessity of recording a particular contract, as to which the courts themselves often falter. However, the statutes are with us, and the chief province of the present day writer is to note the constructions which the precedents lay down. On the principle that these statutes are provided for conditional sales only, *they do not, of course, operate far enough to require the recording of bailment contracts,*

*leases,* unless they are in legal contemplation conditional sales merely parading in the dress of leases, consignments, but even as to these kindred transactions the lines are drawn dangerously near together, nor trust receipts, nor assignment for the benefit of creditors." (emphasis added)

 We have noted the argument that the legislature has the power to enact a statute requiring precisely what the Trustee here contends, and that the evil which it intended to prevent is the same with a lease as with a conditional sales contract. In an opinion involving a conditional sales contract, Onyx Soda Fountain Co. v. L'Engle, 53 Fla. ·314, 43 So. 772 (1907), the Florida Supreme Court said:

. . . The prolonged separation of the title in one party from the open possession in another, upon which he may acquire a false credit or delude a purchaser, is the mischief aimed at by the legislation, and the policy thus declared should receive the favor of judicial interpretation.

In both a lease and a conditional sales contract there is a prolonged separation of possession from the true owner. The property is placed in the open possession of another, clothing the possessor with the indicia of ownership thereby enabling him to commit mischief, such as transferring to a bona fide purchaser for value or pledging the property to an innocent lender as collateral. Thus, the argument goes, there would appear to be no logical reason why a distinction should be made between a conditional sales contract to which the statute clearly applies and a chattel lease to which we are asked to apply it. This argument urges us to make a legislative decision. Just as the legislature has the power to make the statute apply to leases, it has the power to make it apply only to loans or conditional sales contracts, and not to leases. It is not the office of the courts, state or federal, to carry legislation beyond its intended scope, merely on the grounds of logic. More particularly, it is not the office of the federal courts to carry state legislation beyond the range that the state courts are willing to go. The state court having indicated the propriety of a strict construction of this statute, *see* Dillon v. Mizell Live Stock Co., 66 Fla. 425, 63 So. 824 (1913), such is the correct course for the federal courts.

 Deciding that § 726.09 does not apply to the lease of personal tangible property, we need not consider the argument that it was superseded or impliedly repealed by the adoption of the Uniform Commercial Code in Florida. Fla.Stat. 671.1–101 et seq. (1973).

The proper application of Florida law to the claims of the Trustee in bankruptcy seems clear enough to us to find nothing to be gained by certifying the question to the Supreme Court of Florida under Florida Statutes § 25.031, as requested by American. The motion for certification is denied.

 On December 2, 1974, two days before this case was orally argued before the panel, American filed a pleading in this Court styled "Motion to Determine Bankruptcy Jurisdiction, Motion to Correct or Supplement the Record, and Motion to File Additional Briefs on Jurisdiction of Bankruptcy Court." By this motion American sought to have this Court examine the sufficiency of the Amended Petition in Bankruptcy upon which Ludlum was adjudicated a bankrupt some two years ago. Under the Bankruptcy Act, American, as only a creditor of Ludlum, has no standing to challenge the sufficiency of the petition. *See* 11 U.S.C.A. § 41(b). Congress has decided that to allow such a challenge is antithetical to the purposes of the Act, and we have enforced that decision without retreat. A creditor may not attack the petition in bankruptcy, even when he alleges that the petition is so inadequate as to deprive the bankruptcy court of jurisdiction. In re Jack Kardow Plumbing Co., 451 F.2d 123, 128–131 (5th Cir. 1971); Abramson v. Boedeker, 379 F.2d 741 (5th Cir.), cert. denied, 389 U.S. 1006, 88 S.Ct. 563, 19 L.Ed.2d 602 (1967). The motion to determine jurisdiction is denied for lack of standing.

The decision of the district court giving the Trustee in bankruptcy superior rights over American to the property subject to lease by virtue of § 726.09 is reversed and the cause is remanded for further proceedings.

Reversed and remanded.