**In re NORTHWEST RECREATIONAL ACTIVITIES, INC., d/b/a Chattahoochee Plantation Club, Debtor.**

**Bankruptcy No. 79–2976.**

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

April 21, 1980.

See also, 4 B.R. 33; 4 B.R. 36.

Herbert C. Broadfoot, II and David W. Pollard, Swift, Currie, McGhee & Hiers, Donald E. O'Brien, Atlanta, Ga., for petitioner.

## ORDER CONFIRMING MODIFIED PLAN OF REORGANIZATION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

### PREFACE

The original Plan of Reorganization under Chapter 11 of the Bankruptcy Code was filed by the Debtor, Northwest Recreational Activities, Inc., d/b/a Chattahoochee Plantation Club, hereinafter "the Debtor," on January 6, 1980, and a hearing thereon was held on February 21, 1980. The country club facility has five mortgage lien holders on the real property consisting of some 30 acres with clubhouse, dining, tennis courts, tennis clubhouse and horse riding facilities. Five classes of claimants hold liens on the real property.

A reorganization plan was filed on January 16, 1980 and a date set for confirmation hearing on February 21, 1980. At the commencement of the hearing on confirmation on February 21, 1980, the first and second lien holder secured creditors filed motions to dismiss the case contending that the plan could not be confirmed because no Disclosure Statement had been filed by the debtor and approved by the Court pursuant to 11 U.S.C. 1125 prior to solicitation of acceptances and the confirmation hearing. The creditor contended that the failure to file such Disclosure Statement rendered confirmation of a plan fatally defective. The Court orally, at that time and by separate order entered subsequently, dated April 18, 1980, denied said written motions to dismiss. Thereupon, upon motion of the debtor for additional time in which to negotiate with creditors and file a modified plan for subsequent confirmation, the Court continued the confirmation hearing until March 14, 1980.

Extensive good faith negotiations among the debtor and the five classes of creditors were conducted up to and including March 24. On March 24, the confirmation hearing was continued to the afternoon of March 25

to permit additional negotiations with creditors concerning the Modified Plan. On March 25 the Court convened the confirmation hearing and heard the Debtor present the modified plan which had the approval of the first, third, fourth and fifth lien holders. The second lien holder had not approved and contended that the Debtor had not offered full payment of the debt, interest, plus 15% attorneys fees as provided in the loan agreement. The class two creditor argued that the ten-day notice which creditor had given to the debtor in writing pursuant to Georgia law entitled the creditor to the payment of the total debt plus the 15% as established by decisions under the Bankruptcy Act. The Court, citing 11 U.S.C. 1124(2) of the new Bankruptcy Code, reacted negatively to said contention.[1] The Court expressed the view that Congress had closed the door on such contractual provisions in loan agreements to be enforced after the filing of a Chapter 11 case. That Congress had reversed decisions such as *Atlanta International Raceway*,[2] which allowed such provisions to be enforced under the Bankruptcy Act where the ten-day Georgia statutory notice in writing of intention to enforce said provision and collect said amount as a part of the debt had been furnished to the Debtor prior to the filing of the petition for relief. The Debtor stated that it was unwilling to pay the 15% contractual attorneys fees in addition to bringing the debt current but that the Debtor was willing to compensate said creditor for "any damages incurred as a result of any reasonable reliance by such" creditor on such contractual provision or such applicable law as provided in 11 U.S.C. 1124(2)(C). The Debtor contended that the curing of any default of payments under the debt and reinstating such debt and compensating the holder for any damages and leaving the contractual rights of the claimant the same as under the loan agreement leaves the claimant unimpaired under 11 U.S.C. 1124; and thus claimant was deemed to have accepted the modified plan pursuant to § 1126(f) of the Code. The Court expressed general agreement with the con-

tention of the debtor that, under such circumstances, only the determination of the reasonable amount of damages was in issue.

The Class Two lien holder then objected to the continuation of the hearing on confirmation of the plan and the determination by the Court of such dispute surrounding § 1124(2)(C), because the Disclosure Statement required under § 1125 had not been filed by the Debtor and approved by the Court prior to solicitation of the acceptance of said creditor and prior to the commencement of the confirmation hearing. Despite the recognized fact that no Disclosure Statement filed by the Debtor to this Class Two creditor or the other classes of creditors in this particular case, involving only real estate secured creditors on this single tract of real estate, would be any more informative to these creditors than they were then informed, the Court concluded that said creditor was technically correct. Section 1125(b) makes the "written disclosure statement" mandatory and there appears to be no exception to the requirement that some written Disclosure Statement shall be filed and approved by the Court preceding any solicitation or acceptance of a plan.[3]

Whereupon, upon motion of said creditor, joined by the debtor, for a continuance of the confirmation hearing to March 27, the Court continued the confirmation hearing to March 27.

On March 27, 1980, after further negotiations with said second lien holder, the Debtor filed its Disclosure Statement as required by § 1125 of the Bankruptcy Code (hereinafter the "Code"), at the beginning of the confirmation hearing. The debtor also filed its modified plan of reorganization on the morning just preceding the confirmation hearing. At the inception of the confirmation hearing on March 27, the Court considered and approved the Disclosure Statement, which approval is set forth in a separate order of this Court.[4] After said approval, the Court allowed the Disclosure Statement and Plan to be formally presented to the claimants, the five classes of credi-

---

1. See also 11 U.S.C. 502(b).

2. 1 Bankr.Ct.Dec. 1003 (5th Cir.1975).

3. Order of this Court dated April 18, 1980.

4. Order dated April 7, 1980.

tors. (The Plan had already actually been presented, discussed, negotiated with said five creditors). Whereupon, the Court heard from the creditor and the debtor pertaining to the confirmation of the Debtor's modified plan.

## CONFIRMATION

Regarding the five classes of creditors set forth in the Modified Plan, the Court makes the following Findings and Conclusions concerning the treatment of each class and the acceptances of the Modified Plan by the respective classes.

The funding of the Modified Plan is from investment made by an outside investor, Dr. Thomas Barrett from Indiana, who will, after confirmation, own 80% of the stock of Debtor.

*Class 1. Chattanooga Federal Savings and Loan Association* (hereinafter "Chattanooga Federal"). The Debtor proposed that Chattanooga Federal would retain its first lien on the Debtor's property in present approximate amount of $1,060,000.00. On the effective date of the Modified Plan, Chattanooga Federal is to be paid in cash a sum of money sufficient to cure all defaults then existing with regard to Chattanooga Federal's claim, as well as a sum of money representing the damages which it suffered as a result of its reasonable reliance upon its contract with the Debtor or applicable state law entitling it to demand or receive accelerated payment of its claim. Additionally, the maturity of Chattanooga Federal's claim will be reinstated as it existed prior to default. Debtor's counsel represented to the Court that Debtor had agreed with Chattanooga Federal regarding the appropriate sums of money to be paid by Debtor as aforesaid, those sums being as follows:

(a) Payment of arrearages, including principal interest and penalties, and insurance premiums advanced by the creditor ... $77,436.76 [5]

(b) Payment of damages, consisting of actual attorney's fees plus actual expenses, including foreclosure advertising costs preceding the filing and since as allowed by the Court after adequate protection hearing ........................ $20,083.88

Further, Debtor's counsel reported to the Court that Debtor would pay on the effec-

tive date of the Modified Plan all past due taxes, which amounted to approximately $22,800.00.

Chattanooga Federal had given the ten-day notice as provided under the loan agreement pursuant to Georgia law which under the Bankruptcy Act would have allowed Chattanooga Federal to claim an additional 15% amount as attorney's fees upon the existing debt. However, Chattanooga Federal made no claim to said attorney's fees as constituting a part of the claim. Notwithstanding that the Court concluded that Chattanooga Federal under the terms of the Modified Plan was unimpaired, as defined in § 1124 of the Code, and thus it was deemed to have accepted the Modified Plan pursuant to § 1126(f) of the Code, counsel for Chattanooga Federal agreed with the representations of Debtor's counsel and voted to accept the Modified Plan.

Therefore, the Court finds as a matter of fact and concludes as a matter of law that Class 1 has accepted the Modified Plan, thereby satisfying the requirements of § 1129(a)(7) and (8) of the Code as to said class.

*Class 2. R. Arnold Baker* (hereinafter "Baker"). The Debtor proposed that Baker would retain his second lien on the Debtor's property in present amount of approximately $360,000.00. On the effective date of the Modified Plan, Baker will be paid in cash a sum of money sufficient to cure all defaults then existing in regard to Baker's claim, as well as a sum of money representing the damages which he suffered as a result of his reasonable reliance upon his contract with the Debtor or applicable state law entitling him to demand or receive accelerated payment of his claim. Additionally, the maturity of Baker's claim will be reinstated as it existed prior to default, except that a different and increased payment schedule will amortize the debts sooner. Debtor's counsel represented to the Court that Debtor had agreed with Baker regarding the appropriate sums of money to be

---

**5.** Included in the total is the monthly payment due April 1, 1980, for the month of April. Chattanooga Federal has agreed to waive any late payment penalty provided the April payment is made within a few days following April 10, 1980.

paid by Debtor as aforesaid, those sums being as follows:

(a) Payment of arrearages, principal interest and penalties .................... $ 9,999.99 [6]

(b) Payment of damages, which sum was negotiated between Debtor and Baker, including attorney's fees, actual expenses incurred, including foreclosure advertisement costs allowed by the Court during the pendency of this Chapter 11 case, and other consequential damages incurred by Baker by virtue of the filing of the Chapter 11 petition ........... $34,200.00

■ The Court notes that the amounts proposed to be paid to Baker as damages exceed the amount to be so paid to Chattanooga Federal, although the debt to Baker is less. The parties have denied that this payment is in recognition or compliance with the 15% attorneys fees specified in the loan agreement. Therefore, 11 U.S.C. 1124(2) and 11 U.S.C. 1126(f) are not involved. Moreover, and perhaps more importantly, reference any issue of impairment, it appears that Baker's damages, as negotiated and included in this Modified Plan, will be paid by a source other than the Debtor, that is, from funds of Dr. Barrett to be invested in the Debtor as part of this plan. Hence, other creditors will not receive less by virtue of the proposed sum to be paid to Baker than would be received in the event that the Chapter 11 should proceed to a liquidation under Chapter 7 in the absence of confirmation of the plan. Therefore, the Court approves said payment of damages as being in the best interest of creditors.

The Court was further informed as to other aspects of Debtor's negotiated settlement with Baker, which are as follows:

(a) That there shall be an agreement between Debtor and Baker so that, in the event that there is a default in the agreement between Debtor and Chattanooga Federal, such default shall constitute a default in the agreement between Debtor and Baker (hereinafter a "cross-default" provision). The Court has found and concluded that the cross-default provision is fair and equitable and is in the best interest of creditors.

6. Included in the total is the monthly payment due April 1, 1980, for the month of April. Baker has agreed to waive any late payment penal-

(b) That Debtor be restricted regarding its right to convey its assets to another entity for a period of three years from the effective date of the Modified Plan without the consent of Baker, which consent will not be unreasonably withheld. Debtor and Baker, as well as the other creditors represented at the confirmation hearing, agree that this Court shall retain general jurisdiction of the case for a period of three (3) years, one purpose of which is specifically to consider any such possible proposed conveyance by Debtor of its assets to another entity.

(c) That Debtor has agreed to increase the amount of monthly payments to Baker from the sum of $3,333.33 to $4,000.00 per month, which payments will have the effect of amortizing the indebtedness at an earlier date. The Court finds and concludes that said increase in payment to Baker will benefit other creditors, since it will reduce the indebtedness outstanding on the property and would be payments from future income.

Notwithstanding that the Court concluded that Baker thereby was unimpaired, as defined in § 1124 of the Code, and thus he was deemed to have accepted the Modified Plan pursuant to § 1126(f) of the Code, counsel for Baker nevertheless agreed with the representation of Debtor's counsel and to accept the Modified Plan.

*No written acceptance.*

■ The Court finds no provision which requires acceptance by a claimant or class *n writing* as under some provisions in the Bankruptcy Act. Wherefore, the Court considered, and so finds, the oral vote of counsel for Baker to constitute valid acceptance of the Modified Plan.

Therefore, the Court finds as a matter of fact and concludes as a matter of law that Class 2 has accepted the Modified Plan, thereby satisfying the requirements of § 1129(a)(7) and (8) of the Code as to said class.

*Class 3. The Citizens and Southern National Bank* (hereinafter "C & S"). The

ty provided the April payment is made within a few days following April 10, 1980.

Debtor proposed that C & S would retain its lien on the Debtor's property in amount of approximately $33,000.00. On the effective date of the Modified Plan, C & S would be paid in cash the sum of $5,200.00 and then C & S would be paid installments in the amount of $520.00 per month until C & S has received a total amount which, when discounted at a rate of fifteen percent (15%), shall have a present value equal to the allowed amount of C & S's claim as of the effective date of the Plan, which allowed amount is to be determined. The Court was informed, subsequent to the hearing, that Debtor and C & S had agreed to the discount rate in the amount of fifteen percent (15%) and that C & S had voted in writing to accept the Plan.

Therefore, the Court finds as a matter of fact and concludes as a matter of law that Class 3 has accepted the Modified Plan, thereby satisfying the requirements of § 1129(a)(7) and (8) of the Code as to said class.

*Class 4. L. M. Adamson* (hereinafter "Adamson"). The Debtor proposed that Adamson would retain his lien on the Debtor's property in present amount of approximately $132,000.00. On the effective date of the Modified Plan, Adamson will be paid in cash the sum of $7,000.00. In addition, a source other than the Debtor (the prospective purchasers or one or more of them) proposes to pay to Adamson the sum of $2,000.00, representing attorneys fees incurred by Adamson. Additionally, Debtor will resume payment of installments in the amount of $1,000.00 per month until May 1, 1984, on which date Debtor will pay in full the balance of Adamson's claim as allowed by the Court. Counsel for Adamson agreed with the representations of Debtor's counsel and stated that Adamson voted to accept the Modified Plan.

Therefore, the Court finds as a matter of fact and concludes as a matter of law that Class 4 has accepted the Modified Plan, thereby satisfying the requirements of § 1129(a)(7) and (8) of the Code as to said class.

*Class 5. Thomas R. McDonald* (hereinafter "McDonald"). The Debtor proposes that McDonald would retain his lien on the Debtor's property in the present amount of approximately $150,000.00. Commencing thirty (30) months after the effective date of the Plan, Debtor proposes to make monthly payments to McDonald in the amount of $750.00 for eighteen (18) months. Commencing forty-eight (48) months after the effective date of the Plan, Debtor proposes to make payments to McDonald in the amount of $1,500.00 per month until the total sum of $150,000.00, together with interest at eight percent (8%) per annum, has been paid. On March 27, 1980, McDonald filed an acceptance to the Modified Plan.

Therefore, the Court finds as a matter of fact and concludes as a matter of law that Class 5 has accepted the Modified Plan, thereby satisfying the requirements of § 1129(a)(7) and (8) of the Code as to said class.

*Class 6.* Interests of the *holders of common stock* of the Debtor. As stated in the Plan, the interests of the holders of common stock of the Debtor, Messrs. William C. Ellis and Robert J. Butt, shall be unimpaired, except that either (1) Messrs. Ellis and Butt shall convey eighty percent (80%) of their common stock to the prospective purchasers, or (2) the Debtor shall authorize the issuance of additional stock so that the percentage of stock ownership in the reorganized Debtor shall be eighty percent (80%) to the prospective purchasers, and twenty percent (20%) to Ellis and Butt.

The Court finds as a matter of fact and concludes as a matter of law that Class 6 has accepted the Modified Plan, thereby satisfying the requirements of § 1129(a)(7) and (8) of the Code as to said class.

## EVIDENCE SUPPORTING PLAN

The Debtor presented evidence supporting the provisions contained in its Modified Plan. Dr. Thomas Barrett, on behalf of Debtor, testified that he represented the group of prospective purchasers referred to in the Modified Plan; that he had examined Debtor's improved real property; that he had consulted with the examiner as to the present status of the Debtor's business; that he had discussed the financial projections of the Debtor's business with Mr. Hamilton Arnall, a consultant familiar with country club operations; that he had become familiar with the Debtor's books and

records; and that he had read the report of the Debtor and the Disclosure Statement filed with the Court; that he had read the excellent report of the examiner appointed by the Court, its criticisms, its assessment of the needs of the Debtor, and its projections of infusion of capital necessary under certain alternative assumptions. Based upon his investigations, consultations and evaluations, he is prepared on behalf of the purchasing group to commit to the reorganized Debtor the total sum of $400,000.00, to be paid according to the schedule set forth in Article IV of the Modified Plan. Dr. Barrett testified that he recognized the criticisms of management and that it is his intention to serve as an officer and director of the reorganized Debtor and to oversee its use of the infusion of funds and its management. He also committed the reorganized Debtor to promptly engage professional management for the operations of the Chattahoochee Plantation Club.

█ Based upon the representations of counsel for Debtor and the creditors, as well as the testimony of Dr. Barrett, manifested by his investment and intention to implement managerial improvements, the Court finds the following with regard to the eleven tests of confirmation contained in § 1129(a) of the Bankruptcy Code:

(1) The Modified Plan complies with the applicable provisions of Chapter 11 of the Bankruptcy Code;

(2) The proponent of the Modified Plan (the Debtor) has complied with the applicable provisions of Chapter 11 of the Bankruptcy Code;

(3) The Modified Plan has been proposed in good faith and not by any means forbidden by law;

(4) All payments made or promised by the Debtor and by the prospective purchasing group for services or for costs and expenses in connection with the case, or in connection with the Modified Plan and instant to the case, have been disclosed to the Court; and any such payment is to be fixed after confirmation of the Modified Plan, such payment shall be subject to the approval of this Court as reasonable;

(5) The Debtor has disclosed the identity and affiliations of any individual known to the Debtor who is proposed to serve, after confirmation of the Modified Plan as a director, officer or voting trustee of the reorganized Debtor, and the Court finds that the proposal that Dr. Barrett serve as an officer and director of the reorganized Debtor is consistent with the interests of creditors and equity security holders and with public policy. The Court further finds that the Debtor has disclosed that Messrs. Ellis and Butt may be employed by the reorganized Debtor, the terms of which employment shall be reported to the Court and classes one, two, three, four and five creditors by the reorganized Debtor;

(6) The Court finds that the requirements of § 1129(a)(6) does not apply to the present case;

(7) Each holder of a claim in each class has accepted the Plan;

(8) Similarly, each class has accepted the Plan;

(9) The Modified Plan provides for payments of priority claims as set forth in subparagraph (9) of § 1129(a) of the Code;

(10) All classes of claims have accepted the Modified Plan; and

(11) As to the feasibility of the Modified Plan, the Court concludes that this standard goes beyond the showing of adequate monetary contribution to the Debtor and requires that the Court find that confirmation of the Modified Plan is "not likely" to be followed by the liquidation of the Debtor or the need for further financial reorganization of the Debtor or any successor of the Debtor. Management, financial and social promotional, and credibility to current and future members of the country club, is crucial and essential; even exceeding planned physical improvements and maintenance. Based upon the representations made by counsel for the classes of creditors, as well as upon the testimony of Dr. Barrett that professional management, outside current and past officers of Debtor, will be promptly employed to supervise and operate the

country club property, the Court finds that it is not likely that the Debtor will be liquidated, nor will it require further financial reorganization. Therefore, the Court concludes that the Modified Plan meets the feasibility standards contained in subparagraph (11) of § 1129(a) of the Code.

Based upon the foregoing, it is hereby

ORDERED that the Modified Plan filed by Northwest Recreational Activities, Inc. d/b/a Chattahoochee Plantation Club on March 27, 1980, a copy of which Modified Plan is attached hereto, be, and it hereby is, CONFIRMED; and it is

FURTHER ORDERED that any default by Debtor pursuant to the Chattanooga Federal loan and security documents shall constitute an event of default with regard to Baker in addition to all other events of default contained in the Note and Deed to Secure Debt dated November 2, 1973 to Baker, as grantee, from L. M. Adamson, as grantor, and recorded in Deed Book 1474, pages 98–100, of the Cobb County, Georgia Records, as modified by a Modification Agreement dated March 14, 1977, and recorded in Deed Book 1769, pages 104–106 of the Cobb County Georgia Records; and it is

FURTHERED ORDERED that this Court shall retain general jurisdiction of this case for a period of three years following the effective date of the Modified Plan, and that the reorganized Debtor shall, during such period, file with this Court periodic reports of its operations, including receipts and disbursements, in a form sufficient to inform the creditors of the Debtor's financial status.